# ORIGINAL LA TOSCA SOCIAL CLUB *v.* LA TOSCA SOCIAL CLUB.

### TRADE AND BUSINESS NAMES; INJUNCTION.

1. The principle upon which the simulation of trade or business names is restrained, where the name assumed is of a fanciful or arbitrary character, is not that there is property acquired in the word or name employed. but it is to prevent fraud and deception in dealing with the party charged with the simulation or infringement of the name used by another in a similar business.
2. Whether the courts will interfere by injunction in cases involving the alleged simulation of trade or business names must depend upon the circumstances of the particular case; and it is only in plain cases of

wrong and mischief that an injunction will be granted, as the business operations of a party or corporation should not be enjoined upon mere speculation or possible injury because of the use of the particular name claimed by another, and there is no right to an injunction merely because of a similarity of names; there must be injury shown to result therefrom.

3. While a corporation may have an exclusive right to its name, incorporation by several members of a voluntary association under the name of such association will not give an exclusive right to such name, and entitle the corporation to an injunction restraining the use of the name by another corporation subsequently formed under the same or a similar name by other members of the voluntary association.

No. 1358.    Submitted November 6, 1903.    Decided January 13, 1904.

HEARING on an appeal (specially allowed) by the defendant from an order of the Supreme Court of the District of Columbia enjoining, *pendente lite,* the use of a trade or business name.

*Reversed.*

The COURT in the opinion stated the case as follows:

This case is brought here on special appeal allowed under § 7 of the act of Congress of February 9, 1893. The appeal is from an interlocutory order of the supreme court of this District, dated 23d day of July, 1903. By the order appealed from the appellant, the Original La Tosca Social Club, the defendant in the court below, was enjoined, until the final determination of the cause, from using or causing to be used, in any manner whatever, the name of "Original La Tosca Social Club," or "La Tosca Social Club," or any variation thereof; and the order further restrained and enjoined the defendant, its members, etc., from advertising, running, or causing to be run, any excursion or excursions, under the name of "Original La Tosca Social Club," or "La Tosca Social Club,"—the complainant, the La Tosca Social Club, claiming that the assumption and use of such name by the defendant is a violation of a right of a business or trade name acquired by the complainant. The corporate names of the respective corporations, plaintiff and defendant,

VOL. XXIII—7

are not identical, but it is claimed on the part of the complainant that there is such close similarity between them as, in connection with other facts, makes it liable to and which will produce confusion, and will enable the defendant to appropriate the business and patronage that would otherwise be enjoyed by the complainant.

The case can be best understood from a statement of the facts as alleged in the bill and answer,—the order appealed from having been made upon bill, answer, and affidavits filed.

The plaintiff, an incorporated club, filed its bill of complaint against the defendant, the present appellant, also an incorporated club, on the 11th day of June, 1903, in which bill it is alleged that about the year 1895, and for several years thereafter, a number of young men of this District, for purposes of mutual improvement and promotion of social intercourse, formed and maintained an association which was called "La Tosca Social Club," of which Andrew Peters, Samuel Taylor, and John W. Miller were members, and who are now officers of the complainant corporation; that said original association continued in existence from prior to January 1, 1897, down to the date of the plaintiff's incorporation, *viz.*, the 20th day of February, 1903.

That shortly after the incorporation of the plaintiff the pre-existing, unincorporated association, known as "La Tosca Social Club," was discontinued. That prior to the incorporation of the complainant, the original unincorporated association or club consisted of twelve members, to wit, Elphonso Freeman, the present president of the defendant, and certain others named. That said original club derived some revenue from its business of teaching dancing and giving balls, and getting up excursions; and that about the 20th of February, 1903, it was deemed advisable by members of said club that the same should be incorporated, and that said club was incorporated by articles and certificate signed and acknowledged by three members of the said club, the same being members above named, that is to say, Andrew Peters, Samuel Taylor, and Albert Johnson. That shortly after the incorporation of the plaintiff the unincorpo-

rated "La Tosca Social Club" was discontinued, and that the plaintiff corporation continued to carry on its affairs, and that it had advertised an excursion to take place on Monday, June 22, 1903. That shortly after the incorporation of the plaintiff Elphonso Freeman and five others withdrew from said club, and severed their connection therewith, not having anything to do with the corporation; and that these seceding members, in fraud of the rights of the plaintiff corporation to the exclusive use of the name "La Tosca Social Club," did, on or about the 20th day of March, 1903, form an association known as the "Original La Tosca Social Club," the same being the defendant corporation, and that the certificate of incorporation was duly recorded. The plaintiff corporation then alleges that the defendant club was incorporated for the purpose of fraudulently using the good name, good will, and well-earned reputation of the plaintiff corporation, in its said name, "La Tosca Social Club," and for the purpose of deceiving and defrauding the public and patrons of the plaintiff into believing "that when they, the said patrons of complainant club and the public, attended the meetings, excursions, and balls given by the defendant club, that they were attending the dances, balls, and excursions of the complainant club; that said defendant 'Original La Tosca Social Club' was incorporated under the said name for the sole and only purpose of deceiving, defrauding, and falsely leading the patrons of the complainant club into the belief that the defendant was in fact the successor of the said 'La Tosca Social Club,' which was organized in the year 1895, and had gained good repute and a business good will, worth many hundreds of dollars, by the good conduct of its members at the excursions and balls given under the auspices of said club."

That by reason of these and other facts the complainant prays that the defendant club be enjoined, etc.

A rule to show cause why an injunction should not be issued as prayed was entered, and the defendant appeared and filed its answer to the bill.

The defendant, by its answer, in substance, denies every material allegation of the bill except the fact that the complain-

ant was incorporated at the time stated in the bill; but which act of incorporation the answer avers was obtained by stealth and secret means, and without any knowledge or warning whatever being given to the other members of the unincorporated association, and that the first knowledge received of the existence of that corporation by the parties who constitute the present defendant corporation (all of whom are members of the original unincorporated club) was that they saw the notice of said incorporation in the newspapers; and at the next meeting of the club the attention of said three members was called to this fact, but the incorporators made no explanation other than to say that they had incorporated and meant to run the club as they pleased, and that if the other members wished to join they would be required to send in applications to be passed upon by the complainant club.    Thereupon, the defendant, while admitting the fact of its incorporation some time after the incorporation of the complainant club by three of the members of the original unincorporated association, utterly denies all fraud or intention to mislead or deceive anyone on its part, but charges fraud and deception on the part of the complainant.    The bill calls for an answer under oath, and the answer was accordingly filed with the affidavit of the president of the defendant club attached.

*Mr. L. Melendez King, Mr. Wilton J. Lambert,* and *Mr. D. W. Baker,* for the appellant:

1.  The name "Original La Tosca Club" is not synonymous with the "La Tosca Social Club of Washington, D. C."  *Supreme Lodge of Knights of Pythias* v. *Improved Order of Knights of Pythias,* 113 Mich. 133; *International Trust Co.* v. *International Loan Co.* 153 Mass. 278; *Re Bank of Attica,* 35 N. Y. 709.    Again, it might be said that no person could acquire a right to use the name "La Tosca."    La Tosca is defined in the standard dictionary to be a soft ground, concretionary limestone, found in the region of the pampas in South America; and it is extremely questionable whether the name itself could be appropriated by any person or classes of persons.

*Goodyear India Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.* 128 U. S. 598; *Columbia Mill Co.* v. *Alcorn,* 150 U. S. 460; *Glendon* v. *Uhler,* 75 Pa. 467; *Corbin* v. *Gould,* 133 U. S. 308.

2. The answer conclusively shows, and it is not denied, that the appellant has a better right to the use of the name "La Tosca" than the appellee.   Persons cannot by stealth destroy the right of unincorporated associations to the use of a name, nor deprive persons who have incorporated an association of their right to use a name to which they are as lawfully entitled as the corporation attempting to enjoin such use.   And a body of coadventurers cannot, by procuring themselves to be incorporated under a particular name used by another collection of persons doing business at the time of the incorporation of the former, deprive the latter of the right to use the name which they have appropriated. 7 Thomp. Corp. § 8193. See also *Black Rabbit Asso.* v. *Munday,* 21 Abb. N. C. 99; *Grand Lodge, A. O. U. W.* v. *Graham,* 96 Iowa, 592; *Ottoman Cahvey Co.* v. *Dane,* 95 Ill. 205; *Koehler* v. *Sanders,* 122 N. Y. 65; *Canal Co.* v. *Clark,* 13 Wall. 311.

3. If any confusion has arisen by reason of the use of the names of the appellant and appellee, it is a circumstance of which the appellee has no right to complain, the appellant having at least as good a right to the use of its corporate name as the appellee has to use its name.   If injury results to the appellee from such cause it is *damnum absque injuria,* according to *Hazelton Boiler Co.* v. *Tripod Boiler Co.* 152 Ill. 509.

*Mr. Ralph P. Barnard* and *Mr. Guy H. Johnson,* for the appellee:

1. A corporation, like an individual, may acquire a property right to the use of a name as a trade-mark, or as incidental to the good will of its business; and if it has acquired such right it will be protected as of course in its enjoyment to the same extent as an individual would be.   It cannot be deprived of this right by the assumption of its name by a subsequently created corporation.   7 Am. & Eng. Enc. Law, 2d ed. 689.

2. Under the laws of this District the recorder of deeds is forbidden to record a certificate of incorporation which adopts the same name as that belonging to a corporation previously incorporated; and the provisions of the Code do not extend or apply to any corporation, association, or individual who shall, in the certificate filed with the recorder of deeds, use or specify a name or style the same as that of any other incorporated body in the District. *Morrow* v. *Edwards,* 20 D. C. 475; D. C. Code, § 604. See also *Philadelphia Tr., Safe Dep. & Ins. Co.* v. *Philadelphia Tr. Co.* 123 Fed. 534; *Farmers' L. & Tr. Co.* v. *Farmers' L. & Tr. Co.* 21 Abb. N. C. 104.

3. The corporate name is a trade-mark, and from necessity of the thing, and from considerations of public policy and private justice, deserves the same protection from a court of equity. The corporate name is a necessary element of the corporation's existence. Any act which produces confusion or uncertainty regarding the name is calculated to injuriously affect the identity and business of the corporation. Nor will a court of equity refuse to enjoin the wrongful appropriation of its corporate name until the right of the first corporation has been established by verdict of a jury in an action at law. Such right does not rest in parol, but is shown by the record, if at all, and is determined by the court in any form of proceeding. *Newby* v. *Oregon C. R. Co.* 1 Deady, 609.

A simulation of the name, character, system, and methods of another for the purpose of deceiving the public and leading persons dealing with the usurper to suppose they are dealing really with the party whose rights are thus usurped constitutes an offense which entitles the party injured to an injunction. In such case neither guilty knowledge nor fraudulent intent on the part of the wrongdoer need be shown. It is sufficient that the proprietary right of the party and its actual infringement is shown. *Merchants' Detective Asso.* v. *Detective Mercantile Agency,* 25 Ill. App. 250; *American Grocer Pub. Co.* v. *Grocer Pub. Co.* 25 Hun, 398; *Holmes, B. & H.* v. *Holmes, B. & A. Mfg. Co.* 37 Conn. 278; *Howard* v. *Henriques,* 3 Sandf. 725; *Chas. S. Higgins Co.* v. *Higgins Soap Co.* 144 N. Y. 462; *Lee*

v. *Haley,* L. R. 5 Ch. App. 155; *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.* 52 Fed. 94; 1 Beach Corp. § 373 (p. 608); *The Society of the War of 1812* v. *The Society of the War of 1812,* 46 App. Div. 568; *Christy* v. *Murphy,* 12 How. Pr. 77.

4. It would seem to be plain that at least the preponderance of the evidence is in favor of appellee, and that the court is justified in considering the appellee as successor to the old club, and appellant as having been formed by seceders from the old club or from appellee. The cases, so far as we have been able to find, all support the contention that seceders cannot adopt a name so nearly resembling the organization from which they withdraw as to mislead parties dealing with them into the belief that they are dealing with the first organized club. *Holmes, etc.,* v. *The Holmes, etc., Co.* 3 Conn. 278; *Chas. S. Higgins Co.* v. *Higgins Soap Co.* 144 N. Y. 462; *Christy* v. *Murphy,* 12 How. Pr. 77; *McGlynn* v. *Post,* 21 Abb. N. C. 97; *Black Rabbit Asso.* v. *Munday,* 21 Abb. N. C. 99; *Morrow* v. *Edwards,* 20 D. C. 475; *German Hanoverian Coach Horse Asso.* v. *Oldenberg, etc., Coach Horse Asso.* 46 Ill. App. 281; Beach, Inj. §§ 117, 288.

5. An injunction will not invariably be denied or dissolved, even upon a full denial of the equity of the bill. It is always a matter in the discretion of the court, the rule not being imperative, but to be modified according to the circumstances of each case. *Poor* v. *Carleton,* 3 Sumn. 70; *Bradford* v. *Peckham,* 9 R. I. 250; *Roberts* v. *Anderson,* 2 Johns. Ch. 202; *Camden, etc., R. R.* v. *Stewart,* 18 N. J. Eq. 489; *Porter* v. *Jennings,* 89 Cal. 440.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The name employed by both the plaintiff and defendant would seem to be purely arbitrary and fanciful. The name "La Tosca" has no application to, and conveys no idea of the nature and objects of, the social clubs formed, that we can perceive. Whether it was adopted from the geological name descriptive of the pampean rock found in South America, and which name,

though local in its origin, has been given general currency by scientists, or from the grand opera "La Tosca" by Puccini, or some other source, we are not informed; and it is of no very material consequence in this case.    For though the name be entirely fanciful, it may be adopted as a trade name, and, as such, in a proper case, will be protected by a court of equity against infringement.    *Merchants' Bkg. Co.* v. *Merchant's Joint Stock Bank,* L. R. 9 Ch. Div. 560, 563, 47 L. J. Ch. N. S. 828, 26 Week. Rep. 847.    The principle, however, upon which the courts proceed in restraining the simulation of trade or business names, where the name assumed is of a fanciful or arbitrary character, is not that there is property acquired in the word or name employed, but it is to prevent fraud and deception in the dealing with the party charged with the simulation or infringement of the name used by another in a similar business.    The principle is very clearly stated by Giffard, L. J., in the case of *Lee* v. *Haley,* L. R. 5 Ch. 155, 39 L. J. Ch. N. S. 284, 22 L. T. N. S. 251, 18 Week. Rep. 242.    That was an action to restrain the use by the defendant of the name of "The Guinia Coal Co.," in his business.    In the opinion, the Lord Justice said:   "I quite agree that they have no property in the name ['Guinia Coal Co.'], but the principle upon which the cases on this subject proceed is, not that there is property in the word, but that it is a fraud on a person who has established a trade and carries it on under a given name, that some other person should assume the same name, or the same name with a slight alteration in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name."    Upon the same principle it is not infrequent that the use of corporate names has been restrained, where the use tends to mislead or deceive the public to the prejudice of the corporation whose name has been unjustifiably simulated.    *Holmes, B. & H.* v. *Holmes, B. & A. Mfg. Co.* 37 Conn. 278, 9 Am. Rep. 324; *Massam* v. *Thorley's Cattle Food Co.* L. R. 14 Ch. Div. 748, 42 L. T. N. S. 851, 28 Week. Rep. 966; *Chas. S. Higgins Co.* v. *Higgins Soap Co.*

144 N. Y. 462, 27 L. R. A. 42, 43 Am. St. Rep. 769, 39 N. E. 490.

The authorities all concur in holding to the general principle that whether the court will interfere by injunction in this class of cases must depend upon the circumstances of the particular case; the identity or similarity of the names; the identity of the business of the respective parties or corporations; how far the name is a true description of the kind and nature of the business carried on; the extent of the confusion which may be created or justly apprehended, and other circumstances which might justly influence the judgment of the judge in granting or withholding the remedy by injunction. *Chas. S. Higgins Co. v. Higgins Soap Co.* 144 N. Y. 462, 27 L. R. A. 42, 43 Am. St. Rep. 769, 39 N. E. 490. It is only in plain cases of wrong and mischief that the court will be disposed to apply the strong remedy by injunction to restrain the use of a name. The business operations of a party or corporation should not be restrained upon mere speculative or possible injury, because of the use of a particular name claimed by another. The injury must be shown to be real, and such as a court of equity, upon principles of justice, will interpose to prevent. This principle is laid down in many cases, and is well illustrated by the case of *Merchant Bkg. Co. v. Merchant's Joint Stock Bank,* L. R. 9 Ch. Div. 560, 47 L. J. Ch. N. S. 828, 26 Week. Rep. 847. That was a case of a motion on behalf of the plaintiff, the Merchant Banking Company of London, Limited, for an injunction to restrain the defendant, the Merchant's Joint Stock Bank, Limited, from using the name or style of the "Merchant's Joint Stock Bank, Limited," or any other style or name so nearly resembling the plaintiff's name as to be calculated to deceive.

In that case, the Master of the Rolls (Sir George Jessel) said: "What the law did prevent was fraud; and it prevented not only actual fraud, that is, fraud intentionally committed, but it also prevented a man from carrying on business in such a way, whether he knew it or not, as to represent that his business was the business of another man. And it might happen that the mere using a well-known fancy name would be evidence of an

intention on the part of the person using it to commit a fraud. One can well understand a certain fancy name being so attached to a business as to indicate that business and that business alone, and that another man using the same fancy name in carrying on a similar business might be convicted of an intention to defraud from that circumstance alone. That might well be, but still after all it is merely a question of evidence." And in that case the injunction was refused, both upon the ground of want of similarity of name, and the absence of evidence of fraud. Several cases were cited and examined by the Master of the Rolls of applications for injunctions to restrain the use of names, where injunctions were refused, because it did not appear that injury to the complainant would result by the use of the name by the defendant of which the complainant claimed the exclusive use. There is no right to the injunction, merely from the similarity of names; there must be injury shown to result therefrom. *Colonial Life Assur. Co.* v. *Home & Colonial Assur. Co.* 33 Beav. 548, 33 L. J. Ch. N. S. 741, 10 Jur. N. S. 967, 10 L. T. N. S. 448, 12 Week. Rep. 783.

But in this case, the complainant corporation has failed to show any exclusive right to the name "La Tosca." That name was adopted and appropriated by the unincorporated association or club formed several years prior to the incorporation of the complainant club. The three members who seceded or withdrew from that original association, and formed themselves into a corporation, did not by that act acquire any exclusive right to the use of the name of the prior and still then existing unincorporated club or association. The name of "La Tosca Social Club" remained with the original unincorporated association, and the act of the three members in forming the plaintiff corporation did not dissolve or extinguish the pre-existing association, as between the remaining members thereof, and the complainant association. The subsequent formation of the members of the original association into a corporation in no manner destroyed the right to the use of the name of the original association by those who converted that association into a corporation,—such members having the right so to apply and use the name of the

original association or club, in the formation of the defendant corporation. The subsequent formation of the defendant corporation certainly did not confer any right upon the complainant to the use of the name of the original association, to the exclusion of the defendant. The case would seem to be fully within the principle of the decision, cited by the appellant, made in the case of the *Supreme Lodge, K. of P.* v. *Improved Order, K. of P.* 113 Mich. 133, 38 L. R. A. 658, 71 N. W. 470, and the cases therein referred to by the court. In that case it was said by the court, in speaking of the claim made by the complainant corporation to the exclusive use of the name "Knights of Pythias:" "The sole question is, then, whether defendants shall be enjoined from using the name 'Improved Order, Knights of Pythias.' Complainant's counsel insist that by the act incorporating complainant as 'Supreme Lodge, Knights of Pythias' an exclusive right to the name 'Knights of Pythias' was acquired. Numerous cases are cited holding that a corporation has an exclusive right to its name. No case, however, is cited holding that incorporation gives an exclusive right to a name already in use, as the name 'Knights of Pythias' was, an existing voluntary society. On the contrary, *McGlynn* v. *Post,* 21 Abb. N. C. 97, cited by complainant's counsel, and *Black Rabbit Asso.* v. *Munday,* 21 Abb. N. C. 99, hold that in such a case an exclusive right is not acquired." See, also, upon the general subject, *Delaware & H. Canal Co.* v. *Clark,* 13 Wall. 311, 322, 20 L. ed. 581, 583.

There are other grounds upon which the injunction might well be refused, but it is unnecessary to extend this opinion. We must reverse the order appealed from, and remand the cause that the bill may be dismissed; and it is so ordered.

*Order reversed and cause remanded.*