**BLACKS IN GOVERNMENT, Plaintiff,**

v.

**NATIONAL ASSOCIATION OF BLACKS WITHIN GOVERNMENT, Defendant.**

**Civ. A. No. 83–0057.**

United States District Court, District of Columbia.

Oct. 1, 1983.

Pearson Liddell, Jr. and Gloria Washington Liddell, Washington, D.C., for plaintiff.

Leonard McCants, Silver Spring, Md., for defendant.

## MEMORANDUM

GASCH, District Judge.

Plaintiff, an organization known as Blacks in Government (BIG), is seeking a preliminary and permanent injunction against the defendant, National Association of Blacks Within Government (NABWG). Pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure (FRCP) and the agreement of the parties, the Court consolidated the hearing on plaintiff's motion for a preliminary injunction with the trial on the merits as to two of the claims contained in plaintiff's complaint. For the reasons discussed below, the Court denies plaintiff's request for injunctive relief. This memorandum constitutes the Court's findings of fact and conclusions of law as required by Rule 52(a) of the FRCP.

## I. BACKGROUND

Plaintiff is a nonprofit, tax exempt, District of Columbia corporation. Its avowed purpose is to enhance the employment opportunities of black government employees on the federal, state and local levels. The organization was established in 1976 and has over 85 chapters in at least 20 states and the District of Columbia. Plaintiff has spent large amounts of time and money promoting its goals under the trade name of Blacks in Government and its acronym BIG. Defendant was incorporated in Delaware in 1982 for the purpose of providing a "mechanism for the inclusion, growth and power for all present and future blacks employed at all levels of federal, state and local governments."

NABWG came into existence after an internal disagreement occurred between some of BIG's more prominent members. Several of these disgruntled individuals left the organization in order to form a new group—NABWG. Plaintiff filed its complaint in this case some six months after the formation of the new splinter organization. Plaintiff seeks relief on essentially four separate grounds. It claims that the use of the name National Association of Blacks Within Government by the defendant is confusingly similar to its trade name and is, therefore, a violation of Section 43 of the Federal Trademark Act of 1946 (Lanham Act, 15 U.S.C. § 1125). Plaintiff also contends that defendant's use of this name constitutes common law trade name infringement and unfair competition. Counts three and four of the complaint (dealing with claims of conversion and libel) were not addressed by the parties during the hearings on plaintiff's motions for a temporary restraining order and preliminary and permanent injunction and are, therefore, not addressed in this opinion.

## II. ANALYSIS OF THE TRADE NAME INFRINGEMENT AND UNFAIR COMPETITION CLAIMS

### A. *Introduction*

■ Plaintiff does not seek to have this Court enjoin the existence of the defendant's organization. It merely objects to the use of a trade name (National Association of Blacks Within Government) contending that is confusingly similar to its own (Blacks in Government). The key issue that the Court must examine in this case on both the statutory and common law claims is whether the adoption of the trade name National Association of Blacks Within Government by the defendant has resulted in a "likelihood of confusion" on the part of the public. 1 J. McCarthy *Trademarks and Unfair Competition* § 2:3 (1973). Before this issue is analyzed, the Court will discuss briefly certain basic trademark law principles. It should be noted at this point that the law protecting trademark infringement is essentially the same as that protecting commercial and corporate trade names. *See American Steel Foundries v. Robertson,* 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926). A trade name symbolizes the business as a whole, while a trademark identifies and distinguishes the products or services sold by that business.

### B. *Legal Significance of Types of Marks*

■ "Arbitrary," "fanciful," "generic," and "descriptive" are some of the many different categories of trademarks and trade names. The strongest type of mark meriting legal protection is the fanciful trademark. A fanciful mark is a word that has been invented by a manufacturer for the express purpose of functioning as a trademark or trade name like "Xerox" or "Exxon". An arbitrary mark is also accorded preferential treatment under the law. Such a mark is a word commonly used in everyday language but which is arbitrarily applied to the goods or services in question. Arbitrary and fanciful marks are considered "inherently distinctive" and are given legal protection immediately upon their adoption and use. 1 J. McCarthy § 11.2.

■ If, however, the name of a product or organization is not inherently distinc-

tive, it will be protected as a trademark or trade name *only if* the user can prove that through time and usage it has become distinctive. This acquisition of distinctiveness is called "secondary meaning." Both parties in this case apparently agree with the Court's conclusion that Blacks in Government must be considered a descriptive trade name. In order for plaintiff to prevail, it, therefore, will have to show (1) that the name Blacks in Government is so widely recognized that it has acquired secondary meaning and (2) that the two trade names are so similar that there exists a likelihood of confusion. For the reasons discussed below, the Court concludes that plaintiff has not carried its burden on either of these issues.[1]

### C. *Secondary Meaning*

■ Secondary meaning has been defined in different ways by many different courts. It is actually nothing more than a mental association in the consumers' minds between the name in question and the source of the product. Secondary meaning has been said to exist when the trademark or trade name "has come to indicate that the goods in connection with which it is used are the goods manufactured by the [alleged owner]", *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 336, 59 S.Ct. 191, 201, 83 L.Ed. 195 (1938); if the mark is "closely identified with the goods of one particular producer or has otherwise gained public recognition", *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 800 (9th Cir. 1970); or when "the public has learned to identify the name of the product with its source", *Field Enterprises Educational Corp. v. Cove Industries, Inc.*, 297 F.Supp. 989, 994 (S.D.N.Y.1969). One of the most widely cited explanations of secondary meaning states that:

There is nothing abstruse or complicated about this theory, however difficult its application may sometimes be. It contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, ... might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trademark. So it was said that the word had come to have a secondary meaning....

*G. & C. Merriam Co. v. Saalfield*, 198 F. 369, 373 (6th Cir.1912).

■ As mentioned above, the Court concludes that plaintiff has not proved by a preponderance of the evidence that the name Blacks in Government has attained secondary meaning. Because the overlapping central issue in a trade name infringement and unfair competition case is the issue of likelihood of confusion (addressed in part D below), the Court will only briefly discuss its reasons for holding that secondary meaning has not been proved. Plaintiff has attempted to prove secondary meaning largely through the use of circumstantial evidence. When the circumstantial evidence is persuasive, many courts have held that secondary meaning exists.

As the factfinder in this case, however, this Court holds that plaintiff has not met its burden. Basically, plaintiff has emphasized its age, its size, the amount of media attention it has received over the years, the amount of advertising and promotion it has done, the attention it has received from government officials, and the various train-

---

**1.** Thus, to prove a case for trade name infringement or unfair competition, plaintiff must show the existence of two elements. First, it must show that the public recognizes its trade name as identifying its services and second, it must convince the Court that defendant's adoption of the name National Association of Blacks Within Government caused a likelihood of confusion among the potential members of plaintiff's organization. The first element can be shown in one of two ways: either that (1) plaintiff's name is fanciful or arbitrary (which it is not) or that (2) if it is not, that the name has become distinctive because it has attained secondary meaning. *See* 1 J. McCarthy § 15:1 at 514.

ing conferences it has sponsored as proof that the name Blacks in Government has become identified by the public as the provider of such services. This evidence, however, falls short of actually proving the state of mind of the members of the public and the degree to which it recognizes the name Blacks in Government.

### D. Likelihood of Confusion

Even if the plaintiff had proved secondary meaning, the Court would still rule in defendant's favor because it does not feel that there is a likelihood of confusion between the two names. "Likelihood of confusion" is the basic underlying test of common law trademark infringement, federal statutory trademark infringement and the broader category of unfair competition claims. Determining whether a competitor has adopted a trade name that produces a likelihood of confusion is a highly subjective judgment. Many cases that have considered the issue emphasize that precedent is of minor value. The former Court of Customs and Patent Appeals has stated that the issue is a "subjective evaluation" in which prior decisions provide "but meager assistance." *Star Watch Case Co. v. Junghans,* 46 C.C.P.A. 929, 267 F.2d 950, 952 (1959); *Colgate-Palmolive Co. v. Carter-Wallace, Inc.,* 58 C.C.P.A. 735, 432 F.2d 1400, 1402 (1970). *See also Curtice-Burns, Inc. v. Northwest Sanitation Products, Inc.,* 530 F.2d 1396 (Cust. & Pat. App.1976). Some judges have even stated that deciding whether there is a likelihood of confusion is impossible to describe or rationalize in words:

> This determination that I am called upon to make—whether confusion is or is not likely to arise—does not lend itself to resolution by scientific appraisement or comparison. Rather, a finding on infringement is by necessity a subjective determination by the trial judge based on his visceral reactions....

*Societe Anomyme de la Gande Distillerie v. Julius Wile Sons & Co.,* 161 F.Supp. 545, 547 (S.D.N.Y.1958). Legal precedent, however, may indeed be useful as a guide for the Court in many circumstances.

In *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), Judge Friendly discussed some of the factors that enter into such a determination. These include the strength of the mark (whether it is fanciful, arbitrary or descriptive), the degree of similarity between the two marks, the proximity of the products, actual confusion, defendant's good faith in adopting the mark and the sophistication of the consumer group in question. *Id.* at 495. While the Second Restatement of Torts has deleted any reference to this area, *see* Introductory note to part 9 of the Restatement Second, the original Restatement provided the factfinder with still other criteria to be considered.

Clearly, it is not necessary that every word in two trade names be identical for a court to hold that an infringement has occurred. Similarly, it is not necessary that the plaintiff provide the Court with instances of actual confusion (although such evidence would definitely be probative of the issue). The plaintiff merely must show that confusion is likely or probable.

Applying the criteria discussed above to the instant situation requires the Court to conclude that the risk of confusion is low. Since the trade name Blacks in Government is descriptive, it is a weak mark (see part IIA above). While the two names appear to be somewhat similar, there are significant distinguishing features between them. Plaintiff is quite concerned that the defendant will eventually drop the first two words of its name (or that common usage of the name will result in this happening) leaving merely the words Blacks Within Government. Plaintiff, however, has introduced little evidence that would tend to support this fear.

Plaintiff has submitted several affidavits from individuals who claim to have been actually confused upon hearing the name National Association of Blacks Within Government believing that the organization was Blacks in Government. At least one

of these affidavits, however, states that upon closer examination, the individual realized the difference between the two groups. *See* Affidavit of William O. Jones. On the whole, these instances of actual confusion appear to be rather minor. It should also be noted that plaintiff is often referred to by its acronym BIG. This is a strong distinguishing factor between the two organizations. One factor that does weigh heavily in plaintiff's favor is that the two organizations provide quite similar services and have the same potential members. This would definitely increase the danger of confusion. This factor, however, is not sufficient to outweigh the other weaknesses in plaintiff's case.

## III. CONCLUSION

Thus, for the reasons discussed above, plaintiff's case must fail primarily because it has not shown by a preponderance of the evidence that there is a likelihood of confusion between the trade names National Association of Blacks Within Government and Blacks in Government. An appropriate order denying injunctive relief accompanies this memorandum.