**WARD ONE DEMOCRATS, INC., Appellant,**

v.

**Calvin B. WOODLAND, Jr., and Kelvin P. Esters, Appellees.**

No. 04–CV–208.

District of Columbia Court of Appeals.

Argued March 8, 2005.

Decided May 4, 2006.

Tony Norman, with whom James Walker was on the brief, for appellant.

L. Misha Preheim, Washington, DC, with whom Wendy C. McGraw, Norfolk, VA, was on the brief, for appellees.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and TERRY, Senior Judge.*

TERRY, Senior Judge:

Appellant Ward One Democrats, Inc., filed this suit for declaratory relief, seeking exclusive rights to the use of the name "Ward One Democrats." Appellant contends that the trial court erred in denying its motion for summary judgment and granting appellees' cross-motion for sum-

mary judgment. We find no error and accordingly affirm.

## I

At the heart of this case are two local political groups, each claiming to be the rightful user of the name "Ward One Democrats." In 1974 a group calling itself Ward One Democrats (hereafter "WOD 1974") established itself as an unincorporated political organization in Ward One of the District of Columbia. Twenty-eight years later, in November 2002, certain dissatisfied members broke off from this organization to form a competing group, which quickly incorporated itself as a nonprofit political association under the District of Columbia Nonprofit Corporation Act[1] with the name "Ward One Democrats, Inc." (hereafter "WOD Inc." or "appellant"). Despite this relatively recent act of incorporation, the defecting group that formed WOD Inc.—since it included, *inter alios*, some former members (even founders) of WOD 1974—claims that it is in fact the legitimate group known as "Ward One Democrats" that has been operating since 1974. In June 2003 WOD Inc. filed this suit, alleging that it had exclusive rights to the "Ward One Democrats" name and seeking declaratory relief so as to prevent all others—including appellees—from using the name.

Appellees Calvin Woodland and Kelvin Esters served, respectively, as Chairman and Treasurer of WOD 1974 from November 2002 to May 2004. Appellant alleged in its complaint that Woodland and Esters had been "doing business and using the name Ward One Democrats (illegally)" since February 2003, causing "a gross

---

* Judge Washington was an Associate Judge of the court at the time of argument. His status changed to Chief Judge on August 6, 2005.

Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. D.C.Code §§ 29-3001 *et seq.* (2001).

amount of confusion, loss of revenue, [and] reputation" to WOD Inc., and obstructing WOD Inc.'s operations "as an incorporated nonprofit corporation."[2]

The District of Columbia Democratic State Committee ("DSC"), whose membership is comprised in part of the chairmen of the eight ward organizations, recognizes WOD 1974 as the official Democratic organization in Ward One.[3] In the trial court, however, appellant challenged the gatekeeper authority of the DSC, contending that WOD 1974 was always an independent political organization separate from the local Democratic Party apparatus. Moreover, it asserted that WOD 1974 was never chartered by the DSC and even predated the DSC, which appellant alleged did not exist until 1981. In the words of appellant's counsel at the hearing below, "just because we need to use the name Democrat does not put us under the auspices of the D.C. Democratic Party."

The DSC recognized Woodland and Esters as the principal officers of Ward One Democrats (*i.e.*, WOD 1974) duly elected in a special election which the DSC held in Ward One on November 16, 2002.[4] Although elections for ward officers are typically conducted by the ward organizations, the DSC temporarily had withdrawn that authority from WOD 1974 because of its failure to hold timely elections as required by the DSC's by-laws. In October 2002 the DSC ruled that the terms of the then-current WOD 1974 officeholders had expired and announced its decision to conduct a special election. We need not recount the details of the ensuing imbroglio, except to note that certain individuals within WOD 1974 viewed the DSC's action as a gratuitous and unwelcome intrusion.[5] About a month later, these individuals founded the appellant corporation, WOD Inc.

II

■ We begin our legal analysis with a brief statement of the principles governing summary judgment. To succeed on a summary judgment motion, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Hollins v. Federal Nat'l Mortgage Ass'n,* 760 A.2d 563, 570 (D.C.2000) (citing authorities). If that burden is met, the non-moving party then has the burden of showing that there is a genuine issue of material fact which must be resolved by a fact-

2. Appellant brought suit only against Woodland and Esters individually, not against WOD 1974 or the District of Columbia Democratic Party. Appellees filed a motion to join the D.C. Democratic Party as a defendant, but the trial court denied it. That denial is not challenged by anyone in this appeal.

3. The District of Columbia is divided into eight "compact and contiguous election wards" that are "approximately equal in population size." D.C.Code § 1–1011.01(c) (2001). The wards' boundaries are set by statute, *see* D.C.Code § 1–1041.03, but the DSC Constitution asserts plenary control to designate and charter the official Democratic organization within each ward.

4. The DSC, in a letter dated December 10, 2002, to the District of Columbia Office of Campaign Finance ("OCF"), stated that under its constitution and by-laws, the DSC "supervises, conducts, and certifies" all elections held by any Democratic organization in the District that is chartered by the DSC. In a letter to Mr. Woodland dated March 27, 2003, the OCF declared that it was "without jurisdiction to address whether the Ward One Democrats registered with OCF is the 'official organization' " in Ward One.

5. More importantly, these discontented members disputed the DSC's authority to undertake such action. As a result, they improvised an election to install new officers on November 9 and refused to recognize the results of the DSC's special election on November 16.

finder at a trial. *Id.* We review *de novo* a grant of summary judgment, viewing the record in the light most favorable to the non-moving party. *E.g., Futrell v. Department of Labor Federal Credit Union,* 816 A.2d 793, 801–802 (D.C.2003).

With these basic principles in mind, we turn to appellant's various contentions.

### III

■ Appellant maintains that it has "the right to use the name Ward One Democrats and function under that name" or "any similar or derivative name." Appellant's claim is based "on the fact that [it has] operated for over thirty years [and on] the affidavit of Conrad Smith ... [and] the affidavit of Ms. Alma Strange, [who were] the founders of the Ward One Democrats." Specifically, appellant contends that the act of incorporating in 2002 gave it exclusive rights "under the incorporation laws" to use the name "Ward One Democrats" and seeks to prevent WOD 1974, which never was incorporated, from using it.[6] Appellant also asserts that it is "suing under the common law of the District of Columbia." Appellees assert, in response, that use of the challenged term cannot be barred because the name "Ward One Democrats" necessarily denotes WOD 1974—the chartered local organization of the DSC in Ward One.

Appellant's argument misses the mark because appellant's status under the District's Nonprofit Corporation Act does not govern this case. Moreover, appellant misconstrues the applicable law when it maintains that the District's common law, not the law of trademark protection, provides the appropriate analytical framework for this case. The common law and trade-mark law are not mutually exclusive. "Suing under the common law" does not, as appellant contends, preclude the court from analyzing this case as one basically involving a claim based on the established law, both statutory and court-made, governing trademarks and trade names.

■ It is well settled that incorporation, without more, does not grant a corporate entity exclusive rights to a name. By arguing that the mere act of incorporation entitles it to relief, appellant is asserting a broader right in the name "Ward One Democrats" than either the common law or trademark statutes would confer. In *Lawyers Title Insurance Co. v. Lawyers Title Insurance Corp.,* 71 App. D.C. 120, 124, 109 F.2d 35, 39 (1939), *cert. denied,* 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1028 (1940), the court announced a principle which is still valid today: that there is "no authority to sustain a right so absolute. No statute confers it in specific terms. Nor does mere incorporation do so by implication." *See also Foxtrap, Inc. v. Foxtrap, Inc.,* 217 U.S.App. D.C. 130, 135 n. 7, 671 F.2d 636, 641 n. 7 (1982) ("this circuit, following the general rule, has declined to accord any weight to a state agency's general acceptance of a corporate name" (citing *Lawyers Title* )). This has been the law in the District of Columbia for more than a century. *See Original La Tosca Social Club v. La Tosca Social Club,* 23 App. D.C. 96, 106–107 (1904) (members who withdrew from unincorporated association and formed a new corporation "did not by that act acquire any exclusive right to the use of the name of the prior and still existing unincorporated club or association.... 'No case [holds] that incorporation gives an exclusive right to a name already in use ... ' " (citations omitted)).

---

**6.** Incorporation would arguably afford WOD Inc. protection against another entity attempting to incorporate with the same or a "decep-tively similar" name. *See* D.C.Code § 29–301.07(2) (2001).

In the District of Columbia, as in most states, trademark statutes and the applicable case law are modeled after the federal Lanham Act.[7] *See Blacks in Government v. National Ass'n of Blacks Within Government,* 601 F.Supp. 225, 227 (D.D.C.1983) (applying the same analysis under the Lanham Act and District of Columbia common law in a trade name infringement case). In claiming exclusive rights to the name "Ward One Democrats," appellant is asserting a property right in the term to the exclusion of all other potential users. Only the registration of a trademark in the United States Patent and Trademark Office ("USPTO"), however, can assign exclusive rights to that trademark. *See, e.g., Pro–Football, Inc. v. Harjo,* 367 U.S.App. D.C. 276, 278, 415 F.3d 44, 46 (2005) ("The Lanham Trademark Act provides protection to trademark owners ... [who] must register their marks with the Patent and Trademark Office"); *Reese Publishing Co., v. Hampton Int'l Communications, Inc.,* 620 F.2d 7, 11 (2d Cir.1980). Appellant's reliance on mere incorporation is insufficient; we must instead consider appellant's claim under established trademark law. *See, e.g., Partido Revolucionario Dominicano (PRD) Seccional Metropolitana de Washington DC, Maryland y Virginia v. Partido Revolucionario Dominicano, Seccional de Maryland y Virginia,* 312 F.Supp.2d 1, 15 (D.D.C.2004) ("The analysis with respect to the parties' common law trademark infringement claims mirrors the analysis conducted for federal statutory trademark/unfair competition claims"); *Russian Academy of Sciences v. American Geophysical Union,* 1998 WL 34333239, at *3, 1998 U.S. Dist. LEXIS 20598, at *10 (D.D.C.1998) ("The elements that plaintiffs must demonstrate to prevail on trademark infringement claims under the common law and under ... the Lanham Act are [the same]"); *American Ass'n for the Advancement of Science v. Hearst Corp.,* 498 F.Supp. 244, 261–262 (D.D.C.1980).

We therefore hold that appellant's status as a non-profit corporation provides no basis for relief. We agree with appellees that the outcome of this case depends on whether the name "Ward One Democrats" is entitled to protection as a trademark or trade name.[8]

## IV

The sliding scale of trademark or trade name protection was classically stated in *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786 (5th Cir.1983), an opinion which described the four basic categories that guide our analysis here. "A potential trademark may be classified as (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. These categories, like the tones in a spectrum, tend to blur at the edges and merge together." *Id.* at 790.

7. The Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (2000), established the federal system of trademark registration. Although most states have trademark registration statutes patterned after the Lanham Act, common law principles remain "a basic source of protection for trademarks" and continue to inform trademark determinations. *See* EDMUND W. KITCH & HARVEY S. PERLMAN, INTELLECTUAL PROPERTY AND UNFAIR COMPETITION, at 174 (5th ed.1998) (hereafter KITCH & PERLMAN).

8. The term "trademark" refers to the name of a product, service, or business enterprise that can be appropriated to the use of one party under the common law or the Lanham Act. *See Blinded Veterans Ass'n v. Blinded American Veterans Foundation,* 277 U.S.App. D.C. 65, 70, 872 F.2d 1035, 1040 (1989). A "trade name" denotes the business as a whole. *See Blacks in Government,* 601 F.Supp. at 227 ("the law protecting trademark infringement is essentially the same as that protecting commercial and corporate trade names").

A *generic* term denotes the "basic nature" rather than the particular characteristics of a product and cannot acquire trademark protection. "Such terms as aspirin and cellophane have been held generic and therefore unprotectable as trademarks." *Id.* (citations omitted). A *descriptive* term (*e.g.*, Vision Center, referring to a business offering optical goods and services), " 'identifies a characteristic or quality of an article or service' ... such as its color, odor, function, dimensions, or ingredients." It is not protected unless it has acquired "a secondary meaning in the minds of the consuming public." *Id.* (citations omitted). A *suggestive* term (*e.g.*, Coppertone, referring to a line of suntanning products, or Rice Krispies, referring to a crisp cereal made from rice) "suggests, rather than describes, some particular characteristic of the goods or services ... and requires the consumer to exercise the imagination in order to draw a conclusion as to [its] nature." Suggestive terms are protected even without proof of secondary meaning. *Id.* at 791 (citation omitted). An *arbitrary* or *fanciful* term (*e.g.*, Kodak, which has no meaning outside the world of photography) "bears no relationship to the products or services to which [it is] applied" and is also protected even without proof of secondary meaning. *Id.* (citation omitted). All of these labels, however, "are more advisory than definitional ...." *Id.* at 790.

The name "Ward One Democrats" is plainly not suggestive or arbitrary (neither party contends that it is), so our inquiry here is limited to determining whether it is generic or descriptive. Since a generic term is simply a common descriptive name that designates the "basic nature" of the thing, *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 116, 59 S.Ct. 109, 83 L.Ed. 73 (1938), it cannot be appropriated from the public domain and is ineligible for trademark protection. *See Blinded Veterans, supra* note 8, 277 U.S.App. D.C. at 70, 872 F.2d at 1039. Even a registered trademark may become generic over time (*e.g.*, "aspirin"), losing its registered status. *Id.* By contrast, since a descriptive term is not inherently distinctive, it is protected only upon proof of a secondary meaning, which requires a showing that "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id.* at 71, 872 F.2d at 1040, citing *Kellogg Co.*, 305 U.S. at 116, 59 S.Ct. 109.

Our task, therefore, is to determine whether the name "Ward One Democrats" is generic, and therefore unprotectable, or descriptive, in which case it may be protectable, but only upon proof that a secondary meaning has attached to the name.

## A. Generic

Courts have recognized that words which are generic when considered separately may become descriptive when combined. *See Union Carbide Corp. v. Ever–Ready, Inc.*, 531 F.2d 366, 379 (7th Cir.1976). For this reason, we must "look[ ] at the mark as a whole," not just its component parts (*i.e.*, "Ward One" and "Democrats"), to determine whether it is generic (and therefore unprotectable) or descriptive (potentially protectable if it has acquired a secondary meaning). *See Blinded Veterans*, 277 U.S.App. D.C. at 71, 872 F.2d at 1041 (citing authorities). When a mark is registered with the USPTO, it is presumed that the mark is not generic. *Id.* (citing *Reese Publishing Co.*, 620 F.2d at 11). But when, as in the instant case, the mark is unregistered, this presumption does not apply, and the party seeking protection bears the burden of proving that its unregistered mark is not generic. *Id.*

■ Appellant's arguments must fail because the record evidence cannot overcome the presumption that the name "Ward One Democrats" is generically used and understood. In its 2002 corporate filing, appellant described itself as a "nonprofit political organization to inform [and] educate Ward One Democrats on issue[s] that affect them." This usage, we conclude, suggests a distinction between appellant as an organization or corporate entity and Ward One Democrats as a group of persons with shared political views. That distinction was made explicit in a December 2003 deposition in which appellant's treasurer, Patrick Nelson, was asked whether this 2002 statement of purpose referred specifically to the organization known as Ward One Democrats (as opposed to all Democrats living in Ward One). He testified as follows:

Q. When you say Ward One Democrats, are you referring to all Democrats living in Ward One?

A. Any Democrat that's living within Ward One, technically, yes.

Q. So you're not referring to Ward One Democrats technically, the organization, in that [sense], are you?

A. No, I'm not. I'm using Ward One Democrats as individual people who live within the District, registered by themselves on the registered rolls as a Democrat.

The fact that appellant's own treasurer understands "Ward One Democrats" to apply broadly to "any Democrat that's living within Ward One" reflects the impossibility of considering the name as anything other than one in generic use that must remain available to all.

In *Blinded Veterans* the District of Columbia Circuit held that the disputed name, "Blinded Veterans," was generic because it was "difficult to imagine another term of reasonable conciseness and clarity by which the public refers to former members of the armed forces who have lost their vision." *Blinded Veterans*, 277 U.S.App. D.C. at 71, 872 F.2d at 1041 (footnote omitted). By the same reasoning, we conclude that "Ward One Democrats" is generic because its ordinary meaning describes the "basic nature" of what it denotes. Used in combination, the terms "Ward One" and "Democrats" refer to an identifiable class of individuals: members of a certain political party, "Democrats," who reside within a governmentally recognized voting district commonly known as "Ward One." It is difficult to imagine another term by which this class, Democrats living in Ward One, could refer to themselves. Thus the name "Ward One Democrats" cannot be appropriated—either by appellant or by any other group or organization—from the public domain.

Appellant asserts nevertheless that "very serious and material disputable facts" are at issue in this case. But the factual disputes to which appellant refers—involving questions of who founded the organization known as "Ward One Democrats," whether the organization was chartered by the DSC, and who has led and managed the organization through the years since 1974—are not material to the basic issue of whether the name is generic. Also pertinent here is the Lanham Act's instruction that terms descriptive of the geographic location of goods or services are generally not regarded as inherently distinctive and thus are not entitled to trademark protection. *See Sociedad Anonima Vina Santa Rita v. United States Dep't of the Treasury*, 193 F.Supp.2d 6, 20–21 (D.D.C.2001).

## B. *Descriptive*

■ At the hearing on the cross-motions for summary judgment, the trial

court, in an apparent abundance of caution, undertook a broader inquiry seeking "something more" from appellant's argument. We do likewise here, but we cannot find any legal ground that would support a ruling in appellant's favor. Even if we assume for the sake of argument that "Ward One Democrats" is descriptive and not merely generic, appellant has failed to establish that any secondary meaning has attached to the term.

Proof of a secondary meaning requires direct or circumstantial evidence that the public's primary association is not with the product but with its producer or source. Direct evidence may include consumer testimony or scientific surveys of actual consumers. *See* KITCH & PERLMAN, *supra* note 7, at 184. A number of courts have emphasized that direct consumer testimony should not be given great weight; instead, they have relied on the greater objectivity typically found in scientific surveys or polls of consumers. *Id.; see also U.S. Express, Inc. v. U.S. Express, Inc.,* 799 F.Supp. 1241, 1245–1246 (D.D.C.1992) ("failure to produce any evidence of consumer association ... even in the form of current survey evidence, testimonials from customers and the like, fatally undermines plaintiff's claim").

Appellant has not proffered any evidence of actual surveys or polls that might shed light on the public's perception of the term "Ward One Democrats" in the relevant marketplace of Ward One, or even in the broader community of the District of Columbia as a whole. The only evidence on which appellant relied to show secondary meaning was a pair of affidavits from Ms. Strange and Mr. Smith, two of the founders of WOD 1974, claiming that the organization was independent of the DSC. Even when considered in the light most favorable to appellant, these affidavits fail to establish that the term "Ward One Demo-

crats" ever acquired a secondary meaning. *See, e.g., U.S. Express, Inc.,* 799 F.Supp. at 1246 (holding that "testimony of plaintiff's own president about consumer loyalties is not persuasive"). Moreover, assertions of WOD 1974's independence from the DSC are dubious: appellant's own witness, Mr. Smith, testified in his deposition that WOD 1974 has viewed itself as the official party organization in Ward One since its inception. Here again, supposedly "material facts" involving historical questions about the organization's founding and operations have no bearing on the issue of whether the name has acquired a secondary meaning. Even assuming *arguendo* that the incorporating founders of WOD Inc. have used the name since 1974 and that appellees have used it only since 2002 (a dubious assumption on this record), those facts would still fail to establish a secondary meaning which would entitle the name to protection as a trademark or trade name.

## V

Neither the record evidence nor the facts that appellant claims it could have established at a trial can overcome the presumption, *see Blinded Veterans,* 277 U.S.App. D.C. at 71, 872 F.2d at 1041, that the unregistered name "Ward One Democrats" is generic. In addition, even if we accept appellant's asserted "material facts" as true, appellant has not shown that the name has any secondary meaning entitling it to trademark protection. There being no reason to disturb the trial court's decision, the judgment is

*Affirmed.*