DBC OF NEW YORK, INC., Plaintiff,

v.

MERIT DIAMOND CORP., Alarama
Jewelry Co., Inc. and A.L.A. Casting
Co., Inc., Defendants.

No. 90 Civ. 1981 (KTD).

United States District Court,
S.D. New York.

March 14, 1991.

Kirschstein, Ottinger, Israel & Schiffmiller, P.C. (Martin W. Schiffmiller, of counsel), New York City, for plaintiff.

Gottlieb, Rackman & Reisman (Barry A. Cooper, of counsel), New York City, for defendant Merit Diamond Corp.

Levisohn, Lerner & Berger (Peter L. Berger, of counsel), New York City, for defendants Alarama Jewelry Co., Inc. and A.L.A. Casting Co., Inc.

---

**1.** Defendant Merit Diamond Corp. ("Merit") joins in the ALA motion for summary judgment. As to the activities of Merit, they are conceded,

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff DBC of New York, Inc. ("DBC") brings this action asserting violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988), copyright infringement, and pendent state claims for unfair competition for allegedly unauthorized copies made of certain diamond ring designs. Defendants Alarama Jewelry Co., Inc. and A.L.A. Casting Co., Inc. (collectively "ALA") move pursuant to Fed.R.Civ.P. 56 to dismiss the complaint.[1] DBC cross-moves for partial summary judgment on the issue of liability for overt copying.

## STATEMENT OF FACTS

DBC is a small jewelry manufacturer founded by David Benderly in December 1987. DBC markets and sells ladies' diamond rings. The rings sold by DBC are made from castings which DBC purchases from jewelry casters such as ALA. In 1988, Benderly created the designs of two ladies' diamond rings, one containing three graduated marquise stones flanked by two triangular-cut stones ("trillions"), and the other including five graduated marquise stones flanked by two trillions (collectively the "Marquise–Trillion rings" or the "Marquise–Trillion designs"). In addition, these designs feature triangular indentations in the shank (band portion) of the rings, on either side of the stone setting, into which the trillions are set. The shanks themselves are knife-edged, two inclined surfaces on their outer sides meet in a relatively sharp edge. Benderly Declaration ¶¶ 4–5.

DBC introduced the Marquise–Trillion rings in March of 1989. The next July, DBC filed applications to register the copyrights in the Marquise–Trillion designs. These applications were refused registration by the Copyright Office. Benderly Declaration ¶ 12. Benderly also filed a design patent application, which is presently pending in the United States Patent and

for the purposes of this motion, to be the same as those of ALA.

Trademark Office.[2] In addition, DBC filed an application to register the design as a trademark in the United States Patent and Trademark Office, which is still pending. Prior applications have repeatedly been rejected by the U.S. Trademark Office.

## DISCUSSION

■ Summary judgment is available to a party if the entire record demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. If no reasonable trier of fact could possibly find in favor of the non-moving party, then the case may be decided by the court as a matter of law. *United States v. All Right, Title & Interest in Real Property etc.*, 901 F.2d 288, 290 (2d Cir.1990). *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When viewing the evidence, the court must assess the record in the light most favorable to the non-movant and draw all reasonable inferences in its favor. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990). Summary judgment "streamline[s] the process for terminating frivolous claims and [aids the court] to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir. 1986).

## I. *Copyright Act*

■ In order to prove copyright infringement, plaintiff must establish that it owns valid copyrights and that defendants have engaged in unauthorized copying of the copyrighted designs. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). Certificates of copyright registration provide prima facie evidence that copyrights are valid. *Id.* (referring to 17 U.S.C. § 410(c)).

■ DBC's two rings, subject of this suit, were twice rejected by the Register of Copyrights for formal copyright protection. Nonetheless, works of art including jewel-ry are copyrightable. 17 U.S.C. § 102(a)(5) (1988). Additionally, the district court has discretion to make an independent determination in an infringement action as to whether a work is copyrightable, notwithstanding the position of the Copyright Office. *Carol Barnhart Inc., v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985). Even though the two rings at bar were rejected for protection by the Copyright Office, DBC maintains that the designs of the two Marquise–Trillion rings embody sufficient originality for the court to determine copyrightability. I disagree. DBC has offered no evidence of error sufficient to reverse the Register of Copyright's refusal to register the DBC designs.

■ Familiar symbols or designs are not entitled to copyright protection. 37 C.F.R. § 202.1 (1990). Insofar as a shape is in the public domain, (circles, squares, rectangles and ellipses) no copyright may be claimed whether or not it is integrated into a utilitarian article. 1 *Nimmer on Copyright*, § 2.08[B] at 2–103–04 n. 115.2 (1978). The individual elements of DBC's designs, such as the marquise stones, the trillions and the knife-edged shank, are each separately well-known in the jewelry trade before DBC's creation of the rings at bar. Furthermore, DBC's gestalt theory that the whole is greater than the sum of its parts is rejected by the great weight of evidence indicating that these two rings are, on the whole, not exceptional, original, or unique.

"[T]he design of a useful article ... shall be considered a pictorial, graphic or sculptural work only if, and only to the extent that such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 417 (2d Cir.1985) (citations omitted). The rings at bar are comprised of a series of marquise diamonds, one containing three graduated marquise stones flanked by two trillions, and the other including five gradu-

---

**2.** There is no patent infringement claim in this case, presumably because the application is still pending.

ated marquise stones flanked by two trillions. Both rings feature triangular indentations in the shank of the rings on either side of the stone setting into which the trillions are set, and the shanks themselves are knife-edged. Although the rings are attractive, there is no indication that they are original. From the submissions, it is clear that although certain exceptional and unique pieces of jewelry may warrant copyright protection, rings on the whole are purchased for the quality of the stones, secondary to the setting.

Moreover, every design does not warrant full copyright protection. *See id.* at 418 ("Congress has explicitly refused copyright protection for works of applied art or industrial design which have aesthetic or artistic features that cannot be identified separately from the useful article.") There is a heavy reliance on prior art for the formation of new configurations of stones and new ring designs. The Marquise–Trillion rings in this case did not feature configuration or design differences which can be characterized to have existed independently of their utilitarian counterparts. I find that although the rings at bar are attractive, they are not unique enough to override the determination of the Registry of Copyrights at this juncture.

 DBC in its latest promotional materials claims present proprietary rights in the rings as of the commencement of this suit. While it is true that DBC has a present right to be in this court to pursue a copyright claim, despite denial of copyright protection by the Registry of Copyrights, DBC does not have any more proprietary rights in the ring designs now than before the lawsuit was commenced. That DBC indicates in its latest promotional materials a proprietary right in the Marquise–Trillion series is a misrepresentation, and is unfairly prejudicial to its competitors. DBC has no proprietary rights until either the court or the Registry of Copyrights so indicates. DBC maintains that ALA's direct copying of designs in which DBC claimed a copyright is itself evidence that the works have originality and value. I disagree. Nothing

can be adduced thereby for DBC merely begs the precise question at bar.

## II. *Lanham Act*

DBC alleges that by offering for sale and selling in interstate commerce rings embodying the Marquise–Trillion designs, ALA has made false representations in commerce and false designations of origin within the meaning of § 43(a) of the Lanham Act. Although the archetypical Lanham Act or trademark case concerns the distinctiveness of a name, the trade dress of a product may also serve as a trademark. "A product's trade dress ordinarily consists of its packaging. However, the design given a product by its manufacturer also may serve to distinguish it from the products of other manufacturers and hence be protectible trade dress." *Wallace International Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 79 (2d Cir. 1990) (citing *Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987) (trade dress involves the total image of the product)).

 In order to maintain an action for trade dress infringement, the plaintiff must show that its trade dress has acquired a secondary meaning in the consuming public, that the trade dress identifies the source of the product and that there is a likelihood of confusion between the original and infringing trade dress. *Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985). DBC in its submissions admits that it "has *not* claimed that members of the consuming public (i.e., individual purchasers who walk into jewelry stores) are likely to see defendant' knock-off rings and associate them with DBC." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss and in Support of Cross-Motion for Partial Summary Judgment, at 25.

 Relying on a lower threshold theory of liability, DBC asserts only that a legally sufficient cause of action for infringement is pleaded because there has been some confusion as to the source of the ring, namely, one jewelry retailer, upon seeing the ALA rings at a trade show,

approached DBC inquiring about its source. In addition, DBC maintains that the ALA ring is sufficiently similar to DBC's and that upon showing other buyers or customer-representatives the ring, that there was confusion as to which of the two ring designs preceded the other. However, "[t]he core purpose of trademark law is to prevent competitors from copying those aspects of a product or its trade dress that identify the source of the product to prospective consumers." *Id.* at 78. Moreover, the crux of the secondary meaning doctrine is that the design identifies not only the goods but the source of the item. *20th Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir.1987). DBC's assertions hardly form the basis for a finding of secondary meaning under the circumstances. Indeed, DBC failed to put forward evidence of consumer studies, or trade advertising to base its Lanham Act claim. Instead, DBC relied only on one wholesale buyer, its own customer, who allegedly informed DBC that its ring was being sold by ALA. That hardly indicates that DBC was a readily identifiable source of the rings in the first place.

Because DBC's rings sell on their appearance and price, that does not mean that the rings serve as a source identifier. Indeed, there is substantial evidence to the contrary. The designs of the rings at bar, diamonds set in a row with triangular diamonds on the ends, even though ornamental, are purely functional for the design is important to the rings' utility and the success of the rings depends on appearance of the stones and price. Excluding competitors from producing similar products would be unduly oppressive to the marketplace. Moreover, DBC's products are not readily recognizable in the market. Neither does DBC's reputation precede it in the marketplace. *See e.g., Charles of Ritz Group, Ltd. v. Quality King Distributors, Inc.,* 832 F.2d 1317, 1321 (2d Cir.1987) ("an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused as to the source of the goods in question.") DBC falls woefully short of meeting its burden under the Lanham Act sufficient to withstand ALA's motion for summary judgment.

### III. *Unfair Competition*

██ Federal claims for copyright, trademark, and trade dress infringement fail, thus, there is no further basis for federal jurisdiction. Because the parties are non-diverse and DBC's claims for unfair competition are under the purview of New York State common law, they must fall as well.

For the foregoing reasons, ALA's motion for summary judgment is granted and DBC's cross-motion for partial summary judgment is denied. The complaint is hereby dismissed in its entirety.

SO ORDERED.