**U.S. EXPRESS, INC., Plaintiff,**

v.

**U.S. EXPRESS, INC., Defendant.**

**Civ. A. No. 91–2071 (CRR).**

United States District Court,
District of Columbia.

Aug. 26, 1992.

Alan S. Cooper, Kathy J. McKnight and Mary Gronlund of Banner, Birch, McKie & Beckett of Washington, D.C. and Lawrence Rosenthal and Linda E. Strauss of Blum Kaplan of New York City, for plaintiff.

Herbert Cohen and Jonathan Cohen of Wigman & Cohen of Arlington, Va., for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Plaintiff U.S. Express, Inc., a New York corporation with its principal place of business in Jamaica, New York, brings this action against the Defendant U.S. Express, Inc., a Delaware corporation doing business in Washington, D.C., seeking declaratory, injunctive and monetary relief on the basis of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, due to the Defendant's alleged infringement of Plaintiff's tradename and servicemark.[1] The Defendant has filed a counterclaim, requesting the Court to cancel Plaintiff's registration of the tradename/servicemark "U.S. Express" on the Supplemental Register. The Court presided over the trial of this case on August 17, 1992.[2] Upon consideration of the evidence presented at trial, the arguments of the parties, the applicable law and the record herein, the Court shall enter judgment on

---

1. Plaintiff also sues for unfair competition and under unspecified "common law." However, counsel advised the Court during the trial that these claims are tantamount to, and dependent upon, proof of infringement of the tradename/servicemark.

2. The parties jointly waived any rights to a trial by jury. *See* Order, *U.S. Express, Inc. v. U.S. Express, Inc.*, Civ. 91–2071 (D.D.C., Dec. 13, 1991).

the Complaint for the Defendant. The Defendant's counterclaim shall be denied and the Court shall dismiss the above-captioned case with each party to bear its own costs. Pursuant to Fed.R.Civ.P. 52(a), the Court now articulates its findings of fact and conclusions of law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

*1. The term "U.S. Express" is descriptive and is not generic.*

The Court first must determine whether the "U.S. Express, Inc." tradename/servicemark[3] merits protection or whether it is, as Defendant claims, a generic term which may be freely used in commerce because it denotes an entire class of objects. *See, e.g., Blinded Veterans Ass'n v. Blinded American Veterans Found.*, 872 F.2d 1035, 1039 (D.C.Cir.1989) ("Because a generic term denotes the thing itself, it cannot be appropriated by one party from the public domain; it therefore is not afforded trademark protection even if it becomes associated with only one source.") (citing, *National Conf. of Bar Examiners v. Multistate Legal Studies*, 692 F.2d 478, 487 (7th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Abercrombie & Fitch v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976)). A generic term is "one commonly used to denote a product or other item or entity, one that indicates the thing itself, rather than any particular feature or exemplification of it." *Blinded Veterans*, 872 F.2d at 1039 (citations omitted). *See also Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985) ("A generic term is one that refers to the genus of which the particular product is a species"). In this case, the Court must evaluate whether the term "U.S. Express", taken as a whole,[4] denotes a given industry, item or service.

Although the Plaintiff's listing of the term "U.S. Express" on the Supplemental Register at the Patent and Trademark Office is not dispositive on the question of genericness, *see, e.g.*, 15 U.S.C. §§ 1052, 1064(3) (registration may be cancelled if the mark has become generic), it does evidence the examiner's determination that the term "U.S. Express" is capable of distinguishing a product or service and, therefore, is not generic. *See* 15 U.S.C. § 1091(c) (tradename/servicemark "must be capable of distinguishing the applicant's goods or services" to qualify for supplemental register). The examiner's determination is entitled to some weight.

The Defendant has submitted various news articles[5] and dictionary excerpts[6] in an attempt to prove that the term "U.S. Express" is, or has recently become, a generic term for freight delivery services. The Defendant's evidence is not persuasive. Many of the news articles introduced by the Defendant derive from foreign publications and, as such, are not probative of consumer opinion in the relevant market. *See Anheuser–Busch, Inc. v. Stroh Brewery Co.*, 750 F.2d 631 (8th Cir.1984) (fact that term "LA" was descriptive of low alcohol beer in Australia was not relevant); *In re Bel Paese Sales Co.*, 1 U.S.P.Q.2d 1233 (TTAB 1986) (British publications not relevant). Moreover, the Defendant has not introduced any evidence indicating that consumers, as opposed to those who work in or write about the air cargo industry, associate the term "U.S. Express" with freight delivery. *See Blinded Veterans*, 872 F.2d at 1041 ("the test for genericness is whether the public perceives the term primarily as the designation of the article"); *Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F.Supp. 1522 (S.D.Fla. 1988), *aff'd without opinion*, 894 F.2d 412 (11th Cir.1990) (test for genericness de-

---

**3.** For ease of reference, the Court shall use the term "tradename" throughout this Opinion to refer to both the tradename and the servicemark.

**4.** *See, e.g., Blinded Veterans*, 872 F.2d at 1041 ("we accept the general proposition that '[w]ords which could not individually become a trademark may become one when taken togeth-

er'") (citations omitted); *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir.1985).

**5.** *See* Def.Ex. 23.

**6.** *See* Def.Ex. 24.

pends upon the meaning of the term to retail purchasers, not to the trade).

■ Based upon a careful review of the evidence, the Court finds that the term "U.S. Express" is descriptive and is not generic. A review of the dictionary excerpts cited by the Defendant illustrate that, while the term "express" does describe a rapid method of delivery, it does not connote or signify air freight forwarding or even freight delivery itself. *See* Def.Ex. 23. In fact, the Defendant's domestic news articles use the term "U.S. Express" as an adjective to describe particular types of delivery services. In some of the material provided by the Defendant, the phrase "U.S. Express" refers to air freight services only in light of the particular context of the articles. *See, e.g.,* Def. Ex. 24, attaching *Air Cargo Industry is Repackaged,* Chi.Trib., Sept. 17, 1989 (describing "express carriers" and "U.S. express companies" in context of article on air cargo industry). In news articles of more general applicability, the author uses the term "U.S. express" as a descriptive term and does not assume that it connotes freight delivery. *See* Def.Ex. 24, attaching Michael Mecham, *U.S. Negotiators Will Stress More Pacific Rim Growth in '88,* Aviation Week and Space Technology, Jan. 11, 1988, at 72 (using the phrase "U.S. express air cargo carriers"). The term "U.S. Express" standing alone does not tell a consumer what the product is. The term could describe any method of rapid transportation, such as for passengers, as well as various types of expedited parcel delivery in the United States. Accordingly, the Court agrees with Plaintiff that the term "U.S. Express" is descriptive rather than generic. *Cf. Eagle Snacks, Inc. v. Nabisco Brands, Inc.,* 625 F.Supp. 571, 580–581 (D.N.J.1985) ("honey roast," standing alone, is not generic in that the term does not tell the consumer what the product is);

*Schmidt v. Quigg,* 609 F.Supp. 227 (E.D.Mich.1985) ("honey baked ham" is not generic, but descriptive).

*2. Because Plaintiff has not established secondary meaning, the name "U.S. Express" is not entitled to protection from infringement.*

■ Although the term "U.S. Express" is descriptive, the Court finds that Plaintiff is not entitled to relief because the Plaintiff has not met its burden of proof in demonstrating that the term has acquired a secondary meaning so as to warrant protection from infringement. *See, e.g., Blinded Veterans,* 872 F.2d at 1040 ("Because descriptive terms are not inherently distinctive, they acquire trademark protection only upon proof of secondary meaning— *i.e.,* upon proof that the public recognizes only one source of the product or service.") (citing, *inter alia, Kellogg v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938)).[7] In order to meet its burden of proof, Plaintiff must demonstrate that the buying public associated the term "U.S. Express" with its services prior to the time when the Defendant began using the "U.S. Express" mark. *See, e.g., Papercutter, Inc. v. Fay's Drug Co., Inc.,* 900 F.2d 558, 564 (2d Cir.1990) (citations omitted).

The testimony of Thomas Murray, President of the Plaintiff, reveals that Plaintiff began using the term "U.S. Express" in January of 1980 for its air freight forwarding services. *See* Murray Substitute Declaration in Lieu of. Direct Testimony at ¶ 4. The testimony also establishes that the Defendant began to use the "U.S. Express" tradename in 1984. *See* Def.Ex. 14 (articles of incorporation for Defendant U.S. Express, Inc.).

The Court must reject the Defendant's claim that it began using the tradename "U.S. Express" as early as 1982. Certain

---

7. Although terms which are inherently distinctive, arbitrary or fanciful are entitled to tradename protection without a showing of secondary meaning, *see Blinded Veterans,* 872 F.2d at 1040, the Plaintiff here concedes that the term "U.S. Express" does not fall into any of these classifications and is protectible only as a descriptive term which has acquired secondary meaning. *See Plaintiff's Proposed Findings of Fact and Conclusions of Law,* at ¶¶ 10–20. *See also Plaintiff's Response to Defendant's First Request for Admissions,* at No. 4 (included in the record as Def.Ex. 27).

officers of the Defendant corporation U.S. Express, Inc., were also limited partners of U.S. Express, L.P., a company which provided freight delivery services nationwide from 1982 to 1984. *See* Direct Testimony of John Fakler (as amended) at ¶¶ 5–14. However, the evidence does not support a finding that U.S. Express, L.P., was ever sold or transferred to the Defendant U.S. Express, Inc., so as to begin the Defendant's use of the term "U.S. Express" in 1982. *Cf. Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir.1986); *John Curry Skating Co. v. John Curry Skating Co.*, 626 F.Supp. 611 (D.D.C. 1985) (no proof that goodwill was transferred along with sale of certain assets). Defendant's Exhibit 45, an unsigned tax return for Defendant U.S. Express, Inc., indicates that some transfer of depreciable property occurred. However, Defendant's Exhibit 45 does not describe the transferred property, nor does it identify the transferor. The Court is especially troubled by the absence of any financial records and other documentation during the December 1983 to July 1984 time period,[8] as this was the period during which U.S. Express, L.P., would have allegedly been in the process of dissolving. The absence of this documentation supports the inference that U.S. Express, L.P., simply discontinued operations and that the Delaware corporation, U.S. Express, Inc., began anew, without any sale of assets.[9] Although the absence of any written documentation of a transfer is not necessarily fatal to Defendant's claim, there is no clear and convincing testimony establishing a transfer of assets, as occurred in *Sales Analysis Instit. v. Sales Training, Inc.*, 181 U.S.P.Q. 341, 345 (TTAB 1973) and its progeny. Mr. Fakler's testimony as to the transfer of goodwill was vague and self-serving. On cross examination, Mr. Fakler could not recall exactly how the assets and/or the goodwill of the limited partnership were transferred, nor could he recall the value of the assets which were transferred. Furthermore, the defense did not offer any corroborating witnesses, which, as explained above, is puzzling given the accountants' and attorneys' allegedly critical role in effectuating the transfer.

Plaintiff claims that secondary meaning has attached to the term "U.S. Express" due to the size of its advertising expenditures, sales revenue and alleged instances of actual confusion. Thomas Murray, the Plaintiff's President, also testified that customers associate the term "U.S. Express" with the Plaintiff's services. Although Plaintiff's counsel has done an admirable job in identifying the relevant legal issues, upon a close examination of the factual record, the evidence does not support a finding that the term "U.S. Express" acquired a secondary meaning either as of 1984, when the Defendant began to use the name, or in the present day. *See Papercutter, supra; House of Hunan, Inc. v. Hunan at Pavilion*, 227 U.S.P.Q. 803, 1985 WL 72671 (D.D.C. 1985); *Duggal v. Krishna*, 554 F.Supp. 1043, 1047 (D.D.C. 1983) (the duration, continuity and relative exclusivity of the Plaintiff's use of the mark; the extent of advertising and promotion of the mark; and the identity of the Plaintiff's and Defendant's respective markets are all relevant in determining secondary meaning).

The evidence does not show that consumers of air freight services associate the name "U.S. Express" with the Plaintiff's business. Although the Plaintiff cannot be penalized for failing to produce a survey of consumer opinion as of 1984, the failure to produce any evidence of consumer association of the term "U.S. Express" with Plaintiff's services, even in the form of *current*

---

**8.** *See Plaintiff's Designation of Confidential Portions of Defendant's Responses to Plaintiff's Discovery Requests*, Interrogatory No. 17, filed July 23, 1992.

**9.** The Court also finds it difficult to accept Mr. Fakler's statement at ¶ 14 of his declaration that "[d]ue to the fact that we have changed our business location on several occasions, a great deal of our old records have either been thrown away or mislaid." If Mr. Fakler had in fact retained an attorney or accountant to effectuate the transfer of the assets and/or goodwill of the limited partnership to the corporation, it is difficult to understand why records of the transaction were not retained by either the Defendant or *its agents.*

survey evidence, testimonials from customers and the like, fatally undermines Plaintiff's claim. The testimony of Plaintiff's own president about consumer loyalties is not persuasive. *See, e.g., Cellular Sales, Inc. v. MacKay,* 942 F.2d 483, 486 (8th Cir.1991) (citing, *Co–Rect Products, Inc. v. Marvy! Advertising Photography, Inc.,* 780 F.2d 1324, 1333 (8th Cir.1985)).

Although the Plaintiff had sales in excess of $2 million each year between 1980 and 1984 and spent in excess of $50,000 per year on advertising during this period, this evidence, standing alone, does not indicate that consumers associated the name "U.S. Express" with the Plaintiff. *See, e.g., Security Center Ltd. v. First Nat. Security Centers,* 750 F.2d 1295 (5th Cir.1985) (no secondary meaning despite extensive advertising and Plaintiff's use of the name two years prior to the time Defendant began using the term); *Porter Broadcasting Corp. v. Pyramid Broadcasting,* 635 F.Supp. 37, 39 (W.D.N.Y.1985) (no secondary meaning in radio station's use of the term "music marathon," despite evidence of extensive use and advertising); *Blacks in Government v. Nat'l Ass'n of Blacks Within Government,* 601 F.Supp. 225, 228–229 (D.D.C.1983) (declining to find secondary meaning attaching to the term "Blacks in Government" despite organization's age, size, advertising expenditures and media attention).

It remains undisputed that numerous third parties use the term "U.S. Express" to denote goods and services in the freight delivery industry. *See* Def.Ex. 1–7. Although these third party uses are not in the air freight forwarding industry *per se,* many of these third parties have employed the tradename "U.S. Express" in the trucking industry. One of these companies began using the name "U.S. Express" in the trucking industry as early as 1976. *See* Def.Ex. 3; Def.Ex. 8(c). The Plaintiff acknowledges that its air freight forwarding services require transporting materials by truck throughout the country. *See* Def.Ex.

26, *Plaintiff's Answers to Defendant's Interrogatories,* No. 13. In fact, Plaintiff has endeavored to enjoin use of the name "U.S. Express" by certain trucking companies, claiming that the trucking and air freight forwarding industries are closely related. *See, e.g.,* Def.Ex. 33, ¶ 6. Such overlapping uses of the tradename weaken Plaintiff's claim that consumers of air freight forwarding and freight delivery services are likely to associate the term "U.S. Express" exclusively with its services. *See Eagle Snacks, Inc. v. Nabisco Brands, Inc.,* 625 F.Supp. 571, 583–584 (D.N.J.1985); *King–Size, Inc. v. Frank's King Size Clothes, Inc.,* 547 F.Supp. 1138, 1157 (S.D.Tex.1982) (quoting, *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 13 (5th Cir.1974)).

Plaintiff greatly emphasizes that mail intended for the Defendant has been misdirected to the Plaintiff and vice versa. *See* Murray Declaration at ¶¶ 21–26. Although instances of actual confusion may evidence the existence of secondary meaning, *see, e.g., Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001 (9th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 464–65 (3d Cir. 1983),[10] the Plaintiff's evidence does not show that the consuming public mistook Plaintiff's services for that of the Defendant. *See generally, Blinded Veterans, supra.* Rather, as Ms. Imelda Hill's testimony at the trial made clear, the misdirected billing invoices are most likely a function of secretarial and transcription errors, which are not probative on the issue of secondary meaning or consumer confusion. It is significant that Plaintiff did not offer testimony from any customers or other third parties to dispel the inference that the confusion was the result of mailing errors. *See, e.g., Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d 576, 582 (2d Cir.1991) (misdirected phone calls do not show propensity for actual confusion because "no

---

**10.** The Court notes that the Court of Appeals for the District of Columbia Circuit has not addressed whether instances of actual or likely confusion evidence the existence of secondary meaning. Some district courts have accepted this analysis, however. *See, e.g., Duggal v. Krishna,* 554 F.Supp. 1043 (D.D.C.1983) (H. Greene, J.).

evidence links the confusion evinced by the calls to any potential or actual effect on consumers' purchasing decisions"); *Inc. Publishing Corp. v. Manhattan Magazine, Inc.*, 616 F.Supp. 370, 388–389 (S.D.N.Y. 1985), *aff'd without opinion*, 788 F.2d 3 (2d.Cir.1986); *C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir.1985) (citing, *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir.1978)).

Even assuming that these instances of confusion have probative value on the secondary meaning issue,[11] the one single instance of confusion over a seven year period in which a customer, Media Arts International, sent a payment intended for the Plaintiff to the Defendant[12] hardly buttresses Plaintiff's secondary meaning claim. Because the purchasing decision was already made, with Media Arts International having already chosen Plaintiff's services over those offered by the Defendant, the misdirected invoice is more easily explained as a post-purchase billing error rather than an instance of confusion about which entity actually provides the services. *See Lang v. Retirement Living Pub. Co., Inc., supra* (confusion relevant only if there is evidence of "potential or actual effect on purchasing decisions").[13] If anything, the testimony supports the inference that there is not a likelihood of confusion among consumers of air freight forwarding services. John Fakler (and, to a lesser extent, Thomas Murray and Imelda Hill) testified that air freight companies have a great deal of personal contact with their customers, who are highly professional traffic managers, during the process of purchasing air freight forwarding services. *See, e.g.,* Fakler Dec. at ¶ 26. Given this personal contact, it is unlikely that the consumer will be confused as to the company with which he or she is dealing. For all of these reasons, the Plaintiff has not shown the existence of secondary meaning and is therefore not entitled to prevent the Defendant from using the same descriptive tradename.[14]

### 3. The Court rejects Defendant's claims of laches, acquiescence and unclean hands.

The Court must reject the Defendant's affirmative defenses of laches and acquiescence, however. Although the Plaintiff did delay in enforcing its rights, the testimony revealed that the Defendant did not rely on Plaintiff's delay in expanding its use of the "U.S. Express" name. Rather, Mr. Fakler testified that he continued using the name because he concluded that the Plaintiff had no valid claim under the trademark laws. This is not a sufficient basis for a laches or estoppel claim. *See N.A.A.C.P. v. N.A.A.C.P. Legal Defense Fund*, 753 F.2d 131, 138–139 (D.C.Cir.1985), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985) (reliance found where N.A.A.C.P. affirmatively encouraged the Legal Defense Fund's independence, remained as a client, and withdrew its threat to sue); *The Money Store*

---

**11.** Some courts have even suggested that the fact that Plaintiff's consumers would confuse the source of services undermines any secondary meaning claim. *See DBC of New York, Inc. v. Merit Diamond Corp.*, 768 F.Supp. 414, 418 (S.D.N.Y.1991).

**12.** *See* Pl.Ex. 13, 14.

**13.** Plaintiff does not allege that the Defendant began to use the "U.S. Express" name in order to capitalize on the goodwill which attached to the Plaintiff's name. The undisputed testimony indicates that the Defendant had no knowledge of the Plaintiff prior to adopting the "U.S. Express" name. *See, e.g.,* Fakler Dec. at ¶ 15 ("Until 1986, I never heard of plaintiff either personally or from any of our customers"). Moreover, Defendant cannot be charged with constructive knowledge of the Plaintiff's use of the U.S. Ex-

press name; Defendant began using the "U.S. Express" tradename in 1984 and Plaintiff did not place the name on the Supplemental Register at the Patent and Trademark Office until April 2, 1985. These facts distinguish this case from that of *Duggal v. Krishna, supra*.

**14.** Given that the Plaintiff has not met its burden of proof on the secondary meaning issue, there is no need to consider at length whether there is likelihood of confusion in the marketplace. However, as explained above, the evidence adduced by the Plaintiff at trial does not show that purchasers of air freight forwarding services are likely to confuse Plaintiff and Defendant at the time of making their purchasing decision.

**1248**

v. *Harriscorp Finance, Inc.*, 689 F.2d 666, 674 (7th Cir.1982) (no reliance when alleged infringer continued using the mark "because it believed that the plaintiff's claim to national rights in the mark could not be upheld"). There is no basis in the record to support Defendant's belief that the Plaintiff abandoned the "U.S. Express" tradename, or acquiesced in the Defendant's use of it. *Duggal v. Krishna*, 554 F.Supp. at 1047.

■ The Court shall also deny the Defendant's counterclaim with respect to the Plaintiff's alleged "unclean hands." To the extent that this argument resembles a fraud claim, the Defendant cannot proceed. Plaintiff had no notice until the eve of trial that the Defendant would assert that Plaintiff acted in bad faith or with fraudulent intent in procuring the listing on the Supplemental Register.[15] The Plaintiff would be prejudiced by the Court's consideration of such a claim. *See San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 472–473 (10th Cir.1988) (counterclaim must state specific facts giving rise to a claim of a fraud in the procurement of the registration of a tradename as required by Fed.R.Civ.P. 9(b)). Moreover, the Defendant practically conceded that its claim of fraudulent procurement of the tradename had no merit; at the beginning of trial, defense counsel acknowledged that there was no evidence of scienter. *Id.* (claim of fraudulent procurement of a trademark requires proof of false representation of a material fact and scienter). The Defendant's remaining "unclean hands" claims appear to be moot; the Court has already denied Plaintiff's prayer for equitable relief because the tradename has not acquired secondary meaning and is not protectible. Accordingly, the Court shall deny the Defendant's counterclaim.

Finally, the Court shall deny the Defendant's request for an award of attorney's fees. Plaintiff did not bring this action in bad faith, and the case is not an exceptional

one within the meaning of 15 U.S.C. § 1117.

CONCLUSION

For the reasons expressed herein, the Court finds that the name "U.S. Express" is descriptive rather than generic. Although Plaintiff's counsel was a formidable advocate on behalf of his client, the Plaintiff has not met its burden of proving that the term "U.S. Express" has acquired a secondary meaning. The Defendant's counterclaim is denied for the reasons expressed herein. Accordingly, the Court shall enter judgment for the Defendant and shall dismiss the above-captioned case with each party to bear its own costs.

---

15. The Defendant's Counterclaim, which was filed as part of its Answer, does not mention any specific facts relating to an unclean hands, bad faith or reckless disregard for the truth claim. *See* Def. Answer and Counterclaim, filed Oct. 18, 1991.