**DIAMOND DIRECT, LLC, Plaintiff,**

v.

**STAR DIAMOND GROUP, INC., etc., Defendant.**

**No. 99 Civ. 11586(LAK).**

United States District Court, S.D. New York.

Oct. 20, 2000.

---

Charles P. LaPolla, Ostrolenk, Faber, Gerb & Soffen, LLP, for Plaintiff.

Jennifer F. Beltrami, Wolf, Block, Schorr and Solis–Cohen LLP, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action for alleged infringement of plaintiff's copyrighted diamond ring designs, trade dress infringement under the Lanham Act, and analogous state law transgressions. Defendant moves for summary judgment dismissing the amended complaint.

### I.  Copyright Claim

The allegedly infringed ring styles "utilize[ ] a base or 'skirt' consisting of tapered baguettes set upon rows of narrow vertical prongs and therefore ... fall stylistically within the broad category of rings referred to as 'ballerina' style rings." [1]  Plaintiff claims, however, that its rings have original and therefore properly copyrighted design elements that differentiate them from the "prior art": "Whereas other rings in the marketplace utilized a 'ballerina' style base or 'skirt' of tapered baguettes on rows of narrow vertical prongs in combination with a large central stone, [plaintiff's] concept was to combine such a 'ballerina' style base or 'skirt' with a uniquely-designed multi-tiered, rounded-off cluster of tightly-packed small stones." [2]

In order to prevail on its claim of copyright infringement, plaintiff must establish ownership of a valid copyright and unauthorized copying of original elements of the copyrighted work.[3]  Defendant seeks dismissal on the grounds that (1) plaintiff's designs contain nothing original and that its copyrights therefore are invalid, and (2) plaintiff cannot raise a genuine issue of fact for trial as to infringement.

### A.  Copyright Validity

Only original works are susceptible of copyright protection.[4]  Plaintiff's certificates of copyright registration are *prima facie* evidence of the validity of the copyrights in its designs.[5]  The presumption of validity, however, is rebuttable.  Its weight is a matter within the Court's discretion.[6]  And defendant argues that plaintiff's copyrights are invalid because their designs "possess no elements of originality to set them apart from the multitude of other pear-shaped ballerina rings existing before 1996." [7]

To say that a work is "original" in copyright terms is to say that "the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." [8]  Defendant does not dispute, at least for purposes of this motion, that plaintiff independently created the variations that allegedly set its designs apart from what came before.  Instead, defendant argues that the rings do not possess the required element of creativity.

1.  Solow Aff. ¶ 9.

2.  *Id.* ¶ 10.

Plaintiff's two other allegedly infringed styles, Nos. R8158 and R8431, are larger than the R8070 and are said to vary subtly in shape in one dimension.  *See id.* ¶¶ 17, 21.

3.  *E.g., Feist Publications, Inc. v. Rural Tel. Serv., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Eastern America Trio Products, Inc. v. Tang Electronic Corp.,* 97 F.Supp.2d 395, 414–15 (S.D.N.Y.2000).

4.  U.S. CONST. art.  I, § 8, cl. 8; *Bridgeman Art Library, Ltd. v. Corel Corp.,* 36 F.Supp.2d 191, 192 (S.D.N.Y.1999).

5.  17 U.S.C. § 410(c).

6.  *See, e.g., Lakedreams v. Taylor,* 932 F.2d 1103, 1108 (5th Cir.1991); *Bridgeman,* 36 F.Supp.2d at 200 (S.D.N.Y.1999);  17 U.S.C. § 410(c).

7.  Def. Mem. 9.

8.  *Feist,* 499 U.S. at 345, 111 S.Ct. 1282 (citing 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT §§ 2.01[A], [B] (1990)).

It has been established at least since *Bleistein v. Donaldson Lithographing Co.*[9] that the quantum of originality necessary to invoke copyright protection is very small.[10] As Justice Holmes wrote long ago, "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves the final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits."[11] By parity of reasoning, the principle applies to works of applied art such as jewelry designs. So the level of creativity necessary to support copyright is modest indeed. While no precise verbal formulation can capture it,[12] there is some irreducible minimum beneath which a work is insufficiently original to find protection. It therefore is necessary to examine precisely what is at issue here.

In this case, plaintiff first marketed its style No. R7053, a ballerina style ring for which it did not seek copyright protection in view of its recognition that it contained no original elements.[13] The copyrighted rings resulted from modifications to the No. R7053.[14]

The R7053 consists of (a) a pear-shaped skirt of baguette-shaped stones at the perimeter enclosing (b) a parallel ring of round stones which in turn encloses (c) a large center stone.[15] The copyrighted R8070 is identical as to elements (a) and (b). The large central stone, however, is replaced by a "two-tiered rounded off cluster of small, evenly-sized, closely-set round diamonds."[16] The copyrighted R8158 is substantially the same as the R8070 save that the "tiers in the central cluster ... appear flatter and less pronounced than the tiers of the R8070 ..."[17] The copyrighted R8431 is virtually the same as well, except that it is flatter still and exposes somewhat less of the metal setting.[18] In sum, then, the principal difference between the copyrighted designs and the concededly commonplace style R7053 upon which plaintiff says they were based is the substitution at the center of the ring of two tiers of small, closely-set round stones for one large stone. Plaintiff thus claims copyright only for the arrangement of the central cluster of stones and the combination of the central cluster with the concededly commonplace pear shape and ballerina style base.[19]

Lest "every song [be] merely a collection of basic notes, every painting a derivative work of color and stroke, and every novel merely an unprotected jumble of words,"[20] a court cannot assess the originality of a work solely from the originality of the individual component parts. As *Feist* makes clear, a work that is entirely a collection of unoriginal material nevertheless may be copyrighted if the material is selected, coordinated or arranged in an original fashion. While component parts are not entitled to copyright protection simply by virtue of their combination into a larger whole, copyright may protect the particular *way* in which the underlying elements are combined–if the particular method of combination is itself original.[21]

**9.** 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903).

**10.** See generally 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT, § 2.01[B] (2000) (hereafter NIMMER); see also Feist, 499 U.S. at 345, 111 S.Ct. 1282 ("The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble, or obvious it might be.") (internal citations omitted).

**11.** *Bleistein*, 188 U.S. at 251, 23 S.Ct. 298.

**12.** See *John Muller & Co., Inc., v. New York Arrows Soccer Team, Inc.*, 802 F.2d 989, 990 (8th Cir.1986).

**13.** Solow Aff. ¶ 7.

**14.** *Id.* ¶ 9.

**15.** Katz Aff. Ex. 1.

**16.** Solow Aff. ¶ 12; Katz Aff. Ex. 2.

**17.** Solow Aff. ¶ 17; Katz Aff. Ex. 3.

**18.** Solow Aff. ¶ 21; Katz Aff. Ex. 4

**19.** Pl. Mem. 6–7.

**20.** *Yurman Design. Inc., v. PAJ, Inc.*, 93 F.Supp.2d 449, 457 (S.D.N.Y.2000).

**21.** See *Feist*, 499 U.S. at 358, 111 S.Ct. 1282 (the Copyright Act "implies that some 'ways' [of compiling or arranging uncopyrightable

*Feist* involved compilations of facts, but the theory may be applied to derivative works based on discrete, unoriginal elements.[22] Particularly in cases involving design, however, it is difficult to discern when a combination of unoriginal component parts is itself original so as to merit copyright protection. Indeed, courts have struggled over the question of originality of jewelry designs,[23] looking at times to whether the derivative work possesses an "overall distinctive feel" or "markedly different visual impact"[24] from the works from which it is derived.

This case presents similar difficulties. But the Court need not here engage in the uncertain business of assessing "creative spark" or "visual impact." For even assuming that plaintiff's copyrights are valid, the copyright claim would fail for another reason.

### B. *Infringement*

■ To prove infringement, a plaintiff must show both that the defendant actually copied plaintiff's work and that defendant's work is substantially similar to the plaintiff's.[25] The allegedly infringed designs at issue here concededly are derivative works. In consequence, plaintiff's copyrights, assuming their validity, protect only the new material contributed by plaintiff.[26] The test for infringement therefore focuses on the plaintiff's alleged contribution, i.e., whether there is "substantial similarity between the allegedly infringing work and the original elements of the allegedly infringed" work.[27]

■ In applying the test for infringement, it is critical to bear in mind that copyright protects only particular expressions of ideas; ideas themselves, even if original in their conception, are free for the taking.[28] Thus, the idea of a ballerina ring with a small cluster of stones at the center is not protectible. Plaintiff's alleged copyrights protect only the ways in which plaintiff expresses the idea–the particular configurations of the cluster combined with particular configurations of other elements of the ring.[29]

---

material] will trigger copyright, but ... others will not"; determination of copyright rests on originality of coordination or arrangement).

**22.** *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003–04 (2d Cir.1995) (applying *Feist* to originality of derivative clothing designs); *Yurman Design*, 93 F.Supp.2d at 457 (applying *Feist* to ring design derived from uncopyrightable components).

**23.** *See Weindling International, Corp. v. Kobi Katz, Inc.*, No. 00 Civ.2022(JSR), 2000 WL 1458788, *2 (S.D.N.Y. Sept. 29, 2000) (combination of unoriginal elements in design of diamond "bridge" rings found to be original); *Yurman Design*, 93 F.Supp.2d at 457–58 (upholding jury determination that combination of unoriginal design elements constituted original jewelry design); *DBC of New York, Inc. v. Merit Diamond Corp.*, 768 F.Supp. 414, 416–17 (S.D.N.Y.1991) (diamond ring designs combining "utilitarian" design elements lacked minimal spark of creativity); *Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609, 611 (D.R.I.1976) (ring design "utterly devoid of any 'original creativity'" not protectible).

**24.** *Weindling International*, 2000 WL 1458788, at *2.

**25.** *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.1986), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Because the infringement inquiry is resolved based on a lack of substantial similarity, the court here need not discuss copying.

**26.** *See* 17 U.S.C. § 103(b).

**27.** *Eastern America Trio Products*, 97 F.Supp.2d at 415 (citing *Key Publications, Inc. v. Chinatown Today Pub. Ents., Inc.*, 945 F.2d 509, 514 (2d Cir.1991)).

**28.** *See Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea–not the idea itself."); 1 Nimmer, § 2.03[D] ("Copyright may be claimed only in the 'expression' of a work of authorship, and not in its 'idea' ").

**29.** Nimmer notes that "the distinction [between an idea and its expression] constitutes not so much a limitation on the copyrightability of works, as it is a measure of the degree of similarity that must exist between a copyrightable work and an unauthorized copy, in order to constitute the latter an infringe-

The admitted similarity of the rings in question is attributable only to the design idea they share; each ring expresses the idea differently.[30] The collection of round stones in the center of each ring is arranged differently; the baguettes in defendant's ring, when viewed from the side, undulate more deeply and more frequently than those of plaintiff's ring; the tiers in the center clusters of diamonds in plaintiff's rings protrude upward more than in defendant's rings; the plaintiff's rings have closed undersides, whereas defendant's rings' undersides are open; and the shanks of the rings possess different designs.

When one focuses on the distinction between idea and the expression, the result here follows readily. These rings bear clear similarities. But the similarities are inherent in the idea of substituting a cluster of several stones for a single large stone in an otherwise common place design. Once that aspect is put aside, as it must be, the rings in question are not substantially similar, either with respect to the overall look and feel of the rings or with respect to the allegedly copyrightable component parts.[31] Thus, while it may be unclear as to whether plaintiff possesses valid copyrights in the combination of unoriginal design elements, any such copyright has not been infringed by Star Diamond's ring. Accordingly, Diamond Direct's claims of copyright infringement are dismissed.

ment." 1 NIMMER, § 2.03[D]. *See Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc.*, 509 F.2d 64, 65–66 (2d Cir.1974) (declining to extend copyright protection to "idea" of oval-shaped cluster of jewels atop plaintiff's turtle pin; expression of idea lay in other elements of ring not substantially similar to defendant's jeweled turtle pin); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741 (9th Cir.1971) (same analysis with respect to bee pin).

**30.** Plaintiff alleges also that defendant sells a pendant and earrings that infringe plaintiff's ring design. With the exception of the shanks (the thin, tubular portion that holds the ring to the finger), comparison of the ring designs here encompasses comparison of the design with respect to the other jewelry.

**31.** In assessing substantial similarity, the court has examined the rings both with respect to the ostensibly original elements–the arrangement of the diamond cluster and the combination of the diamond cluster with the ballerina design–and with respect to the overall look of the rings. This appears to be correct approach despite *Folio Impressions v. Byer California*, 937 F.2d 759 (2d Cir.1991). While the Court in *Folio* compared only those of the works' elements that were susceptible to copyright protection (the so-called "more discerning" standard), the Second Circuit has cautioned that such an analysis is appropriate only where the other elements of the work have been copied from the public domain. *See Knitwaves*, 71 F.3d at 1004 n. 3 ("in *Folio Impressions* ... we 'extracted' the background design from our comparison ... only

because the background had been copied from a document in the public domain and thus was not part of the author's original contribution."); *Hamil America, Inc. v. GFI*, 193 F.3d 92, 100–01 (2d Cir.1999), *cert. denied*, — U.S. —, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000) (noting that *Folio Impressions* featured "specialized facts" and "provides no authority for the broad proposition that 'in comparing designs for copyright infringement, we are required to dissect them into their separate components, and compare only those elements which are in themselves copyrightable'") (quoting *Knitwaves*, 71 F.3d at 1003).

These cases stand for the proposition that courts must examine works in their totality where, as here, copyright applies to an original *combination* of public domain elements. To assess the substantial similarity of the method, or "expression," of combination, the Court must look to the totality of the works. *See Yurman Design*, 93 F.Supp.2d at 458 (declining "to engage in the mechanical and counterintuitive exercise of considering each individual element" of jewelry designs separately, "especially given that a work may be copyrightable even though it is entirely a compilation of unprotectable elements") (internal citations omitted). This case more aptly falls under *Knitwaves* and *Hamil America*. In *Folio*, copyright lay only in the design of roses and their arrangement, and not in the combination of the roses and the public domain background on which the roses appeared. *See Folio*, 937 F.2d at 765.

## II. Lanham Act

Plaintiff claims next that the designs of its rings are protectible trade dress and that defendant is infringing its rights in violation of Section 43(a) of the Lanham Act.[32] Defendant responds that plaintiff has failed to raise a genuine issue of material fact as to the alleged secondary meaning of its designs and that the action therefore should be dismissed.

■ In *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*,[33] the Supreme Court held that unregistered product design trade dress cannot be inherently distinctive[34] and therefore concluded that product design, or configuration, is protected under Section 43(a) only upon a showing that it has acquired a secondary meaning[35] —in other words, that "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself."[36] The Court reasoned that (1) product design almost invariably serves purposes other than source identification, and (2) "[c]onsumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based upon alleged inherent distinctiveness."[37] Thus, the success of plaintiff's product configuration trade dress claim depends in the first instance on a showing of secondary meaning.

■ On a motion for summary judgment, the moving party must establish the absence of a genuine issue of material fact. But this requirement is not independent of the identity of the party that bears the burden of proof at trial. Where, as here, the burden of proof on an issue at trial lies with the non-moving party, it is sufficient for the moving party to point to a lack of evidence on the issue sufficient go to the trier of fact. The non-moving party, in order to avoid summary judgment, then must come forward with admissible evidence sufficient to raise a genuine issue for trial.[38]

■ The question whether a product design serves principally to identify the source of the product often is determined inferentially. Relevant factors include (1) plaintiff's advertising expenditures; (2) consumer surveys linking the trade dress to a particular source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the trade dress; and (6) the length and exclusivity of the use.[39] Moreover, the degree to which plaintiff's product design differs from others in the marketplace obviously is relevant in a design case like this.

■ Here, the variations between plaintiff's designs and others in the mar-

**32.** 15 U.S.C. § 1125(a).

**33.** 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).

**34.** *Id.* at 1344.

**35.** *Id.* at 1345.

**36.** *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. at 766 n. 4 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)) (internal quotation marks omitted).

**37.** *Wal–Mart Stores, Inc.*, 120 S.Ct. at 1344.

**38.** *E.g., Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (when non-moving party bears burden of proof at trial, moving party is entitled to summary judgment if non-movant fails to make showing on essential element of its claim); *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995) ("In moving for summary judgement against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

**39.** *E.g., George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1536 (2d Cir.), *cert. denied*, 506 U.S. 991, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992); *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F.Supp.2d 154, 164 (S.D.N.Y.1998).

ketplace are very modest, so much so that the relevant audiences would be exceptionally unlikely to associate them with a particular source. Plaintiff has not met the "vigorous evidentiary requirements" required to show secondary meaning.[40] Plaintiff offers no survey evidence, a point of special note.[41] And while evidence of advertising, promotion and sales success can be significant in permitting an inference of secondary meaning, plaintiff's evidence here is much too sparse. The only concrete evidence of advertising was the expenditure of $7,000 on cooperative advertising for No. R8070, $10,000 for No. R8158 and $135,000 for No. R8431,[42] hardly overwhelming sums. There is no evidence of promotion except for exhibition of these designs as part of plaintiff's line at a number of trade shows. And the evidence of sales also is limited: plaintiff has sold 225 units of No. R8070, 145 units of No. R8158 and 2,624 units of No. R8431.[33] While these figures may be important to the plaintiff, they are weak support indeed for the proposition for which they are offered.[34] In the last analysis, the Court holds that no reasonable trier of fact could infer that the primary significance of plaintiff's product designs is to identify their source. Accordingly, defendant is entitled to summary judgment dismissing the Lanham Act claim on the ground that there is no genuine issue of material fact on the issue of secondary meaning.

## III. Conclusion

Defendant's motion for summary judgment dismissing the complaint is granted in all respects. The copyright infringement and Lanham Act claims are dismissed on the merits. The pendent state claims are dismissed for lack of subject matter jurisdiction.

SO ORDERED.

---

**40.** See Thompson Medical Co. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir.1985) ("proof of secondary meaning requires vigorous evidentiary requirements").

**41.** See, e.g., DBC of New York, Inc., 768 F.Supp. at 418; Mushroom Makers, Inc. v. R.G. Barry Corp., 441 F.Supp. 1220, 1231 (S.D.N.Y.1977), aff'd, 580 F.2d 44 (2d Cir. 1978), cert. denied, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

**42.** Katz Aff. ¶¶ 18–20.

**33.** Id. ¶¶ 21–23.

**34.** See Mana Products, Inc., v. Columbia Cosmetics Mfg., Inc., 65 F.3d 1063, 1071 (2d Cir.1995) (evidence of advertising expenditures and customer affidavit not sufficient evidence to survive summary judgment on secondary meaning); DBC of New York, Inc., 768 F.Supp. at 417 (granting summary judgment on secondary meaning in product design trade dress case involving ring designs). See also Judith Ripka Designs, Ltd., v. Preville, 935 F.Supp. 237, 257 (S.D.N.Y.1996) (finding primary purpose of jewelry designs to be aesthetic, not source identifying).